PEOPLE EX REL. THOMAS, ATTORNEY-GENERAL, V. SCOTT, COUNTY CLERK OF ARAPAHOE COUNTY.

1. Under the constitution of this state (art. 10, § 11), providing that, when the assessed value of property in the state shall have reached $100,000,000, the tax for "state purposes" shall not exceed four mills per dollar of valuation, rates of taxation for state purposes aggregating five and seventeen-thirtieths mills per dollar, declared after the assessed value of property in the state had reached $100,000,000, are in excess of the constitutional limit, although only four mills thereof is declared to be for state purposes, and the remainder is for the support of state institutions authorized by the constitution.

2. Any legitimate expenditure of the state, necessary to be provided for by a state tax, is a "state purpose," and the tax to be provided is a tax for a "state purpose."

3. The act of April 7, 1885, declaring a tax of four mills for state purposes, does not repeal by implication Gen. St. §§ 15, 2243, 2444, 2881, 3108, 3167, 3456, declaring rates of taxation for various state institutions, but those rates should be extended in separate columns of the tax list, and deducted from the aggregate rate of four mills, and the remainder of that rate extended in the column of the list in which assessments for taxes to be applied to the expenses of the state government are placed.

4. Constitutions are adopted as a whole, and it is a rule of construction that a clause which, standing by itself, might seem of doubtful import, may be made plain by comparison with other sections of the same instrument.

5. Legal presumptions are in favor of the correctness of contemporaneous legislative expositions of a constitutional provision, but such construction can never abrogate the text, it can never narrow its true limitations, nor enlarge its natural boundaries.

THIS is an original proceeding instituted in the supreme court for a writ of *mandamus* to compel the county clerk of Arapahoe county to extend on the tax list of

said county, for the year 1886, certain taxes in conformity with a notice sent him by the state auditor. The petition is presented by the attorney-general, and states as grounds of application:

" That on the 16th day of August, A. D. 1886, at a regular meeting of the state board of equalization, the said board ordered a tax levy of four mills on each dollar of valuation for state purposes; that on the 30th day of August, A. D. 1886, the state auditor sent to, and the defendant received, the following notice, to wit:

" ' Office of Auditor of State.

" ' Denver, August 30, 1886.

" ' *Hon. Charles H. Scott, Clerk of Arapahoe County —* Dear Sir: At a regular meeting of the state board of equalization, held August 16, 1886, the following tax was ordered levied for the year 1886: For state purposes, four mills on the dollar. The following taxes are levied by acts of the general assembly, viz.: For mute and blind, one-fifth mill on the dollar (sec. 2444, Gen. St.); for university, one-fifth mill on the dollar (sec. 3456, Gen. St.); for agricultural college, one-fifth mill on the dollar (sec. 15, Gen. St.); for insane asylum, one-fifth mill on the dollar (sec. 2243, Gen. St.); for school of mines, one-fifth mill on the dollar (sec. 3108, Gen. St.); for stock inspection, one-fifteenth mill on the dollar (sec. 3167, Gen. St.); for capitol building, one-half mill on the dollar (sec. 2881, Gen. St.); for military poll, one dollar upon each male inhabitant of your county not exempt by law (Sess. Laws 1885, p. 269). The above rates will be charged against your county on the grand total of abstract of assessment, as certified by you to this office.

" ' Very respectfully,

" ' Hiram A. Spruance, Auditor of State.'

" That upon the receipt of said notice it became and was the duty of the defendant, as county clerk of Arapahoe county, in making up the tax list, to compute and carry out in the proper column the state tax at four mills

on the dollar of valuation; that it became and was the further duty of the defendant, as such clerk of Arapahoe county, in making up the tax list for the year A. D. 1886, to combine under one head upon the tax list, under the head of 'State Institutions,' in one column, the following taxes: For mute and blind, one-fifth mill on the dollar; for university, one-fifth mill on the dollar; for agricultural college, one-fifth mill on the dollar; for school of mines, one-fifth mill on the dollar; for insane asylum, one-fifth mill on the dollar; for stock inspection, one-fifteenth mill on the dollar; for capitol building, one-half mill on the dollar."

The petitioner then avers the extension of the *four*-mill rate for state purposes by the respondent, and his refusal to extend the rates levied by acts of the general assembly for the support of the state institutions, and for the capitol building fund.

The answer of the respondent denies the power or authority of the state board of equalization to order the tax levy mentioned in the notice, averring, upon the advice of counsel, that the only power vested in said board with respect to a tax levy at said meeting was to reduce the rate fixed by statute for state purposes. Respondent denies that he has neglected or refused to extend upon the tax list the rates prescribed by law for the several state institutions, but avers the extension of the same in the manner required, and admits that, in making up the tax list for the year 1886, he only extended four mills on the dollar of valuation *for all state purposes*, and state institutions included. The answer then sets up, in defense of the course pursued by the respondent, in this behalf, and as further cause why a writ of *mandamus* should not be issued against him, that in the year 1886 the taxable property within the state amounted to more than $100,000,000, and that section 11 of article 10 of the state constitution provides that "the rate of taxation on property, for state purposes, shall never exceed six

mills on each dollar of valuation; and, whenever the taxable property within the state shall amount to one hundred million dollars, the rate shall not exceed four mills on each dollar of valuation." The answer further avers that the rate of taxation for all state purposes, including the support of state institutions, for the year 1886, is limited by the constitution to *four* mills, and that, in so far as any statute provides for or levies a greater rate, it is null and void.

To this answer the attorney-general demurs on the ground of insufficiency to constitute a defense to the application.

T. H. THOMAS, Attorney-General, for the People.

Messrs. WM. B. MILLS, County Attorney, and SULLIVAN and MAY, for respondent.

BECK, C. J. We deem it unnecessary, for the purposes of the present case, to discuss the powers of the state board of equalization, for the reason that it appears from an examination of the laws in force levying state taxes that all the levies sought to be enforced by the peremptory writ prayed for were made by the legislature, and not by the state board of equalization. It is averred in the petition that the four-mill rate for state purposes was levied by the state board of equalization, but these taxes were in fact levied by the fifth general assembly, and no change in the rate so prescribed was made by the state board. Laws 1885, p. 318, § 3. The same is also true of the rates levied for the support of the state institutions. A separate act was passed in each instance, fixing a rate to be levied annually, on all taxable property within the state for the support of each of these institutions. Some of these laws were enacted at the first session of the general assembly of the state, and some at later sessions thereof, but all prior to the session of 1885. These laws remain in force, and must be re-

garded as standing levies of the rates prescribed, and as anthorizing an extension of the taxes therein provided for. 1 Desty, Tax'n, 468; *Davis v. Brace*, 82 Ill. 542. The legislature has so regarded these levies, as appears from amendments made to some of the acts fixing the same; and while they were understood to be levies for legitimate state expenses, and duly authorized by the constitution, yet they were evidently not understood to be covered and included in the constitutional provision which limited the rate of taxation "for state purposes." This is shown by the whole course of legislation bearing on the subject.

At every regular session of the legislature since the adoption of the state constitution, a rate of taxation has been prescribed "for state purposes." In the same section of these several acts, up to and including the year 1883, the county clerk of each county has been required to extend these taxes in a separate column of his tax list. The language of these several acts is as follows: "The county clerk of each county, in making up the tax list required by this act, shall compute and carry out, in the proper column, a state tax at the rate aforesaid." Laws 1877, p. 756, § 44; Laws 1879, p. 152, § 1; Laws 1881, p. 208, § 1; Laws 1883, p. 247, § 1. The amendment of April 7, 1885, adopts the same provision, by reference to section 70, Gen. St. (Laws 1885, p. 318, § 3).

The form of the first tax list prescribed by the legislature exhibits the same intent. It provides a column for state taxes, one for deaf-mute tax, and indicates, by a blank column and foot-note, an intent that other columns are to be added for other special state levies. Gen. Laws, p. 758. By the first section of an act approved February 4, 1876, which is still in force, it was provided that "all taxes for state institutions in each year shall be combined under one head, and entered by the clerk of each county of this state upon the tax list, under the head of 'State Institutions,' in one column." Gen. St. p. 837, § 2868.

That it was the legislative intent to make separate provisions for the support of the state institutions from that provided for defraying the expenses of the different departments of the state government is further shown by the acts of 1881 and 1883, above cited. The first provides "that for the years 1881 and 1882, the rate of taxation shall be, *for state purposes*, four mills on the dollar, and for the purpose of establishing a fund for a capitol building, one-half of one mill on the dollar, unless the state board of equalization shall fix a lower rate." Laws 1881, p. 208. The act of 1883 provides "that for the years of 1883 and 1884, and annually thereafter, the rate of taxation shall, *for state purposes*, be three and one-half mills on the dollar, and for the purpose of establishing a fund for a capitol building, one-half of one mill on the dollar, unless the state board of equalization shall fix a lower rate." Laws 1883, p. 247. The capitol fund, in these acts provided for, has no reference to the "interest fund," or the "capitol sinking fund," provided for by the act of February 11, 1883. The understanding of the legislature that the *rates* levied for the state institutions should be in addition to the rate levied for the so-called *state purposes*, and that they should be separately extended on the tax rolls, is still further apparent from the language of sections 1 and 3 of the act approved February 12, 1881. Section 1 provides "that in all cases wherein county clerks have failed, from any cause whatever, in whole or in part, to compute and extend the taxes on the county tax rolls for the years 1879 and 1880, for the mute and blind institute, state university, agricultural college, school of mines, insane asylum, and military poll funds, according to the levies fixed by law for these several purposes, the county commissioners of any such county are hereby authorized and required to cause such deficiency to be paid into the state treasury from the general county funds." Section 3 imposes a penalty of not less than $500, nor more than $1,000,

upon any county clerk who fails to compute and extend the taxes for any state fund according to the levy made therefor by law.

From this review of the legislation on the subject under consideration it sufficiently appears that the rate of taxation levied "for state purposes" was not intended by the legislature to include, as part and parcel thereof, the rates levied for the state institutions. Respecting both purposes, then, the rates were separately levied, and the laws in force required them to be separately extended, the rate for state purposes in one column, and that for state institutions in another column. This review also shows the legislative construction of the limitations on the rate of taxation imposed by section 11 of article 10 of the constitution. The rates therein prescribed relate only to taxes *for state purposes;* and, if this clause does not cover and include *all* state purposes (the position assumed by the relator), it follows that, as to the state purposes not included, there was no limitation.

We now approach the main question involved in this case. If the four mills so levied by the legislature of 1885 were designed to be in addition to the specific levies, the total rate levied for all state purposes or expenditures for the year 1886 amounts to five and seventeen-thirtieths mills on the dollar. The question, then, to be decided is, has the state legislature power and authority, under the constitution, when the valuation of the property within the state amounts to or exceeds $100,000,000, to levy an annual state tax at a rate exceeding four mills on the dollar of valuation for *all* state purposes?

Article 10 of the constitution is devoted to the subject of revenue, and upon a correct construction of its provisions depends the solution of this question. This article requires the general assembly to provide by general laws for the levy and collection of state, county and municipal taxes; that the laws to be enacted shall prescribe such regulations as shall secure uniformity of tax-

ation, and a just valuation of the property to be taxed. It specifies what property shall be exempt; provides for a state board of equalization, and defines its powers; requires the general assembly to provide by law for an annual state tax, which shall be sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year; limits the annual appropriations and expenditures to be authorized by the general assembly to the total state tax provided or to be provided by law, and declares that the rate levied shall not exceed that allowed by section 11 of said article. Section 11 limits the rates of taxation for state purposes, and provides how the rate, for a specified period, may be increased. This section is as follows: "The rate of taxation on property, for state purposes, shall never exceed six mills on each dollar of valuation; and, whenever the taxable property within the state shall amount to one hundred million dollars, the rate shall not exceed four mills on each dollar of valuation; and, whenever the taxable property within the state shall amount to three hundred million dollars, the rate shall never thereafter exceed two mills on each dollar of valuation, unless a proposition to increase such rate, specifying the rate proposed, and the time during which the same shall be levied, be first submitted to a vote of such of the qualified electors of the state as, in the year next preceding such election, shall have paid a property tax assessed to them within the state, and a majority of those voting thereon shall vote in favor thereof, in such manner as may be provided by law." It will be seen that the language of this section is plain, clear and unambiguous, and that no room is left for construction as to the limitations therein imposed, unless it be in respect to the meaning intended to be conveyed by the clause "for state purposes."

Constitutions are adopted as a whole, and it is a rule of

construction applicable to them as well as to other instruments, that a clause or section which, standing by itself, might seem of doubtful import, may be made plain and its true meaning discovered by comparison with other sections or clauses of the same instrument. The second section of the revenue article just summarized requires the general assembly to "provide by law for an annual tax sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year." That this annual tax was designed to cover the entire expenses of the state, so far as necessary to provide therefor by taxation, is confirmed by the provision of section 16. This section prohibits the legislature from making any appropriations or authorizing any expenditure whereby the expenses of the state, during any fiscal year, shall exceed the total tax provided by law, and also prohibits the legislature from increasing the levy in excess of the rates allowed by section 11. If, then, any definition of the term "state purposes" is necessary to a decision of the questions presented by the defense of the respondent, it is to be found in the revenue article itself. Any legitimate expenditure of the state necessary to be provided for by a state tax is a state purpose, and the tax to be provided is a tax for a state purpose. It has been repeatedly stated in the decisions of this court, on evidence deemed by us sufficient to justify the statement, that a principal design of the framers of the constitution, and of the people in adopting the same, was to inaugurate an economical state government, and, in order to carry out this purpose, limitations against extravagance in the administration of it were inserted. Now, with such a purpose in view, how essentially unavailing it would be to limit the rate of taxation as to *certain* governmental purposes and to leave it without restraint or limitation as to *all other* purposes for which revenue may be provided. The absurdity of such a proposition is patent on its face.

In our judgment, a contrary intention is clearly expressed in section 11 of article 10, and the correctness of this judgment is amply sustained by the context.

The relator interposes, in behalf of the theory on which the case is prosecuted, the rule of *contemporaneous construction*. He reminds us that successive legislative assemblies, commencing with the adoption of the constitution, have construed this section as a limitation of the mill rate which may be levied to defray the expense of the state government proper, which is constituted, by article 3 of the constitution, of the *legislative, executive* and *judicial* departments. He urges, in support of this interpretation, that a state purpose is that which is necessary for the support of the state, and that, since the three departments named constitute the state government, it is only the taxes necessary for the support of these departments that can be said to be included in this clause. He maintains that the state institutions form no part of the powers of the state, are not material to its existence, and, while they are entitled to be supported by the state, yet, being of secondary importance to the existence of the state government, it could not have been intended by the framers of the constitution that the taxes necessary for their support should be classed as taxes "for *state purposes.*" This position is supplemented and fortified by the argument *ab inconvenienti*. It is alleged that if the rate to be levied for *all* state purposes, including the one and seventeen-thirtieth mills directed by prior laws to be levied for the support of the state institutions, be now limited to four mills on the dollar, it will result in a deficiency of revenue to meet the current expenses of the state government, as fully appears from the expenditures of the past year.

The construction placed by several legislative assemblies upon the constitutional provision, and the inconveniences which may be occasioned by adopting a different construction, are deserving of, and have received, respectful

and thoughtful consideration. We approve the doctrine laid down by jurists and writers on constitutional law, that great deference is due to a contemporaneous legislative exposition of a constitutional provision. This doctrine rests on sound reason. Legal presumptions· are in favor of the correctness of such expositions. It is said that the question whether a law is void for repugnancy to the constitution is one of such delicacy that it is seldom, if ever, to be decided in the affirmative in a doubtful case; also, that where a construction of a constitutional provision has occurred contemporaneously with the adoption of the constitution, been acquiesced in for a long period of time, and valuable rights are claimed under it, great weight is to be given it on account of the opportunities afforded the law-makers for ascertaining the intention of the instrument, and the inconveniences likely to result from a decision that such construction was erroneous. Cooley, Const. Lim. 81–86, 219; Sedg. St. & Const. Law, 412; Dwar. St. 65; *Fletcher v. Peck*, 6 Cranch, 128. But these, after all, are only suggestions to be considered and weighed by the judiciary when called upon to pass upon the correctness of. legislative acts. The rule upon this subject is that the constitution is to be regarded as higher authority than any other law; that it is the true intent of this instrument that is to be enforced; and that, when its meaning is plain, it is the solemn duty of the courts to enforce it, regardless of incidental effects. It has been well said that "contemporary construction can never abrogate the text; it can never narrow its true limitations; it can never enlarge its natural boundaries." Story, Const. § 40.

After a careful examination of the subject under consideration, and giving due weight to all established rules and principles of construction applicable to a question of the nature and importance of that here presented, we are unable to interpret the limitation of the rate of taxation *for state purposes* otherwise than as already stated.

In our judgment, there is no room for a reasonable doubt
concerning the intention of the provision in question.
The language employed is not ambiguous, and the intent
to restrict the legislature to an annual rate of taxation
for *all state purposes,* when the valuation of property
should reach $100,000,000, appears to us to be clear, plain
and palpable.

It may be true, as alleged by the attorney-general, that
a levy of four mills on the dollar will not, at the present
time, support the state institutions, and also provide a
sufficient revenue to defray the necessary expenses of the
departments of state.    But this consideration, however
serious, cannot control the decision of the question.    " A
constitution," says Judge Cooley, " is not to be made to
mean one thing at one time, and another at some subse-
quent time, when the circumstances may have so changed
as perhaps to make a different rule in the case seem de-
sirable."    Const. Lim. 67.

It was foreseen by the framers of the constitution that
such an emergency as the present might arise.    Their de-
termination to protect the people from the imposition of
onerous taxes to support a state government is unmistak-
able.    But to fix the proper limitations, such as would
effectually restrain extravagance on the one hand, and
at the same time make ample provision for the necessary
expenses of a state government at different periods of its
existence on the other hand, was, to a certain extent, ex-
perimental.    To meet this difficulty it was provided, in
the same section which limits the rate of taxation, that
the rate might be increased, by submitting the proposed
increase to a vote of the tax payers of the state.

The last proposition of the relator is that, if section 11
is to be construed as restricting the legislature to a tax
of four mills on the dollar for all state purposes and ex-
penditures under the present valuation of the property
within the state, then the act of April 7, 1885, repeals by
implication the acts levying separate taxes for the state

institutions. We cannot sustain this proposition. There
is not such a repugnancy or conflict between the acts re-
ferred to as to justify the ruling contended for. The act
of 1885, like the prior acts, levies a rate of tax for state
purposes for the two fiscal years ensuing. No reference
is made therein to the acts prescribing the rates levied
for the state institutions. As suggested by counsel for
respondent, several of these institutions were in existence
at the time of the adoption of the constitution. Section
5, article 8, provided that these several territorial institu-
tions should, upon the adoption of the constitution, be-
come institutions of the state; and section 1 of the same
article provides that "educational, reformatory and
penal institutions, and those for the benefit of the insane,
blind, deaf and mute, and such other institutions as the
public good may require, shall be established and sup-
ported by the state in such manner as may be prescribed
by law." The several acts in question were passed in
conformity to, and in compliance with, the requirements
of the constitution. Rates of taxation were fixed therein,
supposed to be sufficient for the support of these several
state institutions, and required to be levied annually.
We have shown that the legislature was in error in sup-
posing that a rate levied "for state purposes" could be
properly construed as embracing a *portion*, and not *all*,
state purposes. This construction being erroneous, it
follows that the statutory direction to county clerks in
making up the tax lists, to "compute and carry out in
the proper column a state tax at the rate aforesaid," was
likewise erroneous. We perceive no constitutional ob-
jection to the statute requiring the taxes levied for state
institutions to be separately extended. But, if both di-
rections were carried out literally, it would result in a
state tax in excess of the constitutional limit, to wit,
*five and seventeen-thirtieths* mills on the dollar. The
latter error being in the direction to county clerks to ex-
tend the whole rate levied for state purposes in one

column, this direction must be construed to conform to the interpretation placed upon the clause "for state purposes." Thus construed, the duty of the respondent is to extend, in the proper column of the tax list, a state tax at the rate of four mills on the dollar, less the rates required by law to be extended in another column for the support of the state institutions.

The peremptory writ is denied.

*Writ denied.*