THE PEOPLE EX REL. THE REGENTS OF THE STATE UNI-
VERSITY ET AL. v. THE STATE BOARD OF EQUALIZATION
ET AL.

THE PEOPLE EX REL. THE BOARD OF TRUSTEES OF THE
STATE NORMAL SCHOOL ET AL. v. THE STATE BOARD
OF EQUALIZATION ET AL.

1. CONSTITUTIONAL LAW—TAXATION.
It is provided by the constitution that the rate of taxation for state pur-
poses shall not exceed four mills on each dollar of valuation.
Special levies are to be taken into consideration in determining the
aggregate which is so limited to four mills.

2. SAME—STATE BOARD OF EQUALIZATION, POWERS OF.
The state board of equalization has nothing to do with the levy of taxes.
It was created for the purpose of assessing certain property and the
equalizing and adjusting the valuation of all property in the state.
The only apparent exception to this rule has reference solely to the
rate to be levied for state purposes, the legislature having provided
that "there shall be levied and assessed upon the taxable real and
personal property within the state in each year, the following taxes:
For state purposes, four mills on the dollar, when no lower rate is
directed by the state board of equalization."

3. SAME.
The legislature having power to levy taxes aggregating four mills on
the dollar, its mandates must, if not contrary to constitutional re-
quirements, be enforced until that limit is reached. The power
being then exhausted, further levies cannot be made.

4. SAME.
When the total levies aggregate more than four mills on the dollar, it
is the duty of every officer connected with the levy and collection
of revenue to refrain from doing any act which falls within the in-
hibition of the constitution.

5. SAME.
A levy for state purposes is as much a legislative levy as a levy for any
special purpose. It is a levy of four mills when no lower rate is
directed by the state board of equalization and is to be treated as
an absolute levy of four mills, subject to the conditions: 1st, that
all prior levies, if not repugnant to the constitution, shall be re-
spected; and, 2d, a reservation of power in the state board of
equalization to name the general levy. In determining the rate
the board has only to take the appropriations and the assessment

into consideration to fix a rate that will produce the required revenue.

6. SAME.

It is made the imperative duty of the legislature to provide by law a tax sufficient to defray the estimated expenses of the state government for each fiscal year.

7. STATUTORY CONSTRUCTION.

The portion of amended sections of statutes which are merely copied without change, are not to be considered as repealed and again enacted, but to have been the law all along.

8. SAME.

By an act approved March 17, 1891, a levy of one sixth of a mill is provided for certain of the state educational institutions. As authority for a levy for these purposes is given in one and the same act, it cannot be assumed that the legislature intended to favor one of these institutions against another, but rather that all should stand on an equality, hence such reduction as may be found necessary to bring the total levy for all purposes within four mills should be made from these several levies *pro rata*.

## *Original Proceedings by Mandamus.*

THE cases were commenced by the filing of sworn petitions. The petitions and answers are in substance the same in both cases. The opinion of the court was rendered upon demurrers to the answers, the petitioners not desiring to plead over.

In the case of The Regents of the State University, the pleadings are as follows, to wit:

"TO THE HONORABLE THE SUPREME COURT OF THE STATE OF COLORADO AND THE JUSTICES THEREOF:

"Your petitioners represent and show unto your honors that they and each of them now are the duly elected, qualified and acting regents of the State University of Colorado, situated at Boulder, in said state, and that the said Davis H. Waite is the duly elected, qualified and acting governor of the state of Colorado; that the said N. O. McClees is the duly elected, qualified and acting secretary of state; that the said Albert Nance is the duly elected, qualified and acting treasurer of

the state; that the said F. M. Goodykoontz is the duly elected, qualified and acting auditor of state, and that the said Eugene Engley is the duly elected, qualified and acting attorney general of the state, and that the said defendants, by virtue of the several offices to which they have been elected, and which they now hold and enjoy, constitute the state board of equalization.

"Your petitioners further show unto your honors that it was and is the duty of the said defendants and each of them, at the September meeting of said board of equalization, as provided by law, to adjust, assess and levy on behalf of the said University of the State of Colorado, located at Boulder, as aforesaid, in addition to the regular tax and levy provided therefor by the laws, a certain other special tax, consisting of one tenth of one mill on each and every dollar of the assessed valuation of all taxable property in the state, which is to be collected in the same manner and at the same time as is now provided by law in the assessment and collection of all other state taxes, as was especially provided by an act entitled 'An Act to Provide a Special Fund to Meet Urgent Needs of the State University by an Additional Assessment of One-Tenth of a Mill for the Years 1893 and 1894,' which said act was duly passed and enacted by the general assembly of the state of Colorado for the year 1893, and was approved thereafter on, to wit, the 8th day of April, A. D. 1893, and published at page 475 in the Session Laws of said year; that in pursuance of said act the said defendants, constituting the said board of equalization, did theretofore, and during the year 1893, assess and levy the said special tax of one tenth of a mill in addition to the regular tax for the said year 1893, but that at the regular meeting of said board on, to wit, the 8th day of September, A. D. 1894, at which time the said levy should have been made by the said board and transmitted by them to the proper officers of each of the counties in said state for assessment and collection as a part and together with the regular general state tax, the said board, notwithstanding the demand

of your petitioners, refused and still continue to refuse to make said adjustment, levy and assessment.

" Your petitioners further say that they are informed and believe, and so charge the fact to be, that the said defendants, constituting the said board, refused to make and transmit the said special levy on behalf of the university for the year 1894, because in their judgment they do not consider that the said university was in absolute need of said extra funds, whereas, in truth and in fact, your petitioners allege that without said special tax it will be impossible for them to maintain and conduct the said university in a satisfactory manner, or to furnish instruction and educational opportunities for the large number of students who will attend during the following school year.

" Your petitioners further show unto your honors that, under the provisions of the law, it is necessary for the said board of equalization to transmit to the county clerk of each of the several counties of the state a statement of the assessments and the rate of taxes which are to be levied and collected within his county for state purposes for that year, and that this statement shall be made on or before the 20th day of September in each year; and your petitioners further say that the said statement, which has been or is being prepared by the said defendants for such transmission, does not contain the special tax of one tenth of a mill as it should under the provisions of the law; that if your petitioners should institute this suit and ask the relief first of any district court having jurisdiction thereof, the necessary delay in having such court hear the same, and the right of appeal, which the said defendants would undoubtedly exercise, would produce such further delay until the matter could have finally been adjudicated and passed upon by this tribunal that the said statement would have been made by the said defendants to the different county clerks, and it would not be possible to compel the said defendants to insert the said special tax within the levy for said purposes on or before the said 20th

day of September, nor until a long time thereafter, and when it would be entirely too late for the said defendants to act as a board for the year 1894; that it would then be necessary for your petitioners to bring a multitude of suits by *mandamus*, or such other writs as they should be advised, against each and every county clerk within the entire state of Colorado.

"Wherefore your petitioners pray that an alternative writ of *mandamus* may be issued against the said defendants and each of them, returnable at some short day, compelling them to make, assess, adjust and levy the said special tax of one tenth of a mill for the benefit of the State University at Boulder, in addition to the regular tax already therefor provided by law to be inserted in the general tax for state purposes for the year 1894, and to transmit the same therewith on or before the 20th day of September, 1894, to the county clerk of each and every county in the said state as provided by law, or to show cause why they should not do so.

"And in duty bound your petitioners will ever pray."

### ANSWER.

"Now come the above named defendants, and for their return and answer to the alternate writ and petition herein say:

"That it is not true that the defendants refuse to make or transmit the said special levy in behalf of the said university for the year 1894 because they do not consider that the said university was in absolute need or any need of said extra funds, but because the said board, at the said September meeting, of the year 1894, had, by making other levies required by law which have a constitutional and statutory preference and priority over said special tax, already made levies aggregating four mills on the dollar of the taxable property of the state, before they reached the levy provided by the act of 1893, mentioned in plaintiff's writ and petition; that the levies so made, as aforesaid, are as follows, viz:

| | |
|---|---|
| For General Revenue, . . . . | $2 \frac{9}{30}$ mills. |
| Interest on Capitol Building Bonds, . | $\frac{4}{30}$ " |
| Mute and Blind Asylum, . . . . | $\frac{1}{6}$ " |
| University, . . . . . . | $\frac{1}{3}$ " |
| Agricultural College, . . . . . | $\frac{1}{6}$ " |
| School of Mines, . . . . . | $\frac{1}{6}$ " |
| Insane Asylum, . . . . . . | $\frac{1}{3}$ " |
| Capitol Building Fund, . . . . | $\frac{1}{3}$ " |
| Stock Inspection, . . . . . | $\frac{1}{30}$ " |
| Normal School, . . . . . | $\frac{4}{30}$ " |
| Total, . . . . . | 4 mills. |

"Defendants further say that the said levy of two and nine thirtieths mills for general revenue is necessary for the payment of the ordinary expenses of the executive, judicial and legislative departments of the state government for the fiscal year A. D. 1894, and legislative appropriations, payable out of the general revenue of said fiscal year, having a preference and priority in law to said special university tax; that the other said levies, except that of the capitol building bond sinking fund, as made by said board, are based upon statutory continuing appropriations, and constitute a fixed tax required by law to be annually levied by said board, said appropriations having been made by the general assembly of Colorado prior to the enactment of said special university tax; that the levy for said capitol building fund is made in pursuance of a law passed by said general assembly long before the enactment of said special university tax, and for the purpose of liquidating an existing obligation of the state.

"Defendants further say that the aggregate of the levies so made, as hereinbefore alleged, amount to four mills on all the taxable property of the state, and that they are prevented by an inhibition of the state constitution from levying a greater sum than said four mills.

"Defendants answering further allege that the payment of said statutory appropriations for the fiscal year A. D.

1894, out of and from the general revenue of said year, will exhaust said revenue.

" Wherefore defendants pray that said alternate writ may be discharged, and for costs."

Messrs. THOMAS, HARTZELL, BRYANT & LEE, Mr. J. W. McCREERY and Mr. S. A. GIFFIN, for petitioners.

Mr. C. J. HUGHES, *amicus curiæ.*

THE ATTORNEY GENERAL and Mr. H. T. SALE, for respondent.

CHIEF JUSTICE HAYT delivered the opinion of the court.

These actions are brought for the purpose of compelling the state board of equalization to correct and adjust the tax levies for the year 1894. The levies for that year, as declared at the September meeting of the board, are as follows:

| | |
|---|---|
| For General Revenue, . . . . | $2 \frac{9}{30}$ mills. |
| Interest on Capitol Building Bonds, . . | $\frac{4}{30}$ " |
| Mute and Blind Asylum, . . . . | $\frac{1}{6}$ " |
| University, . . . . . . . | $\frac{1}{5}$ " |
| Agricultural College, . . . . . | $\frac{1}{6}$ " |
| School of Mines, . . . . . | $\frac{1}{6}$ " |
| Insane Asylum, . . . . . . | $\frac{1}{5}$ " |
| Capitol Building Fund, . . . . . | $\frac{1}{2}$ " |
| Stock Inspection, . . . . . | $\frac{1}{30}$ " |
| Normal School, . . . . . | $\frac{4}{30}$ " |

4 mills.

The foregoing levy omits a special tax of one tenth of one mill provided by the legislature for the State University, and reduces the levy for the State Normal School from five thirtieths of a mill to four thirtieths, and also reduces the amount of the stock inspection tax from one fifteenth of a mill to one thirtieth.

This action of the board was taken for the purpose of bringing the total levy within the limit fixed by the state constitution, viz: " SEC. 11. The rate of taxation on property, for state purposes, shall never exceed four mills on each dollar of valuation."

It is claimed by petitioners that the special levies should have been made for the full amount provided by the various legislative acts, and that the reduction necessary to bring the total within the constitutional limit should have been made from the levy for general revenue.

The duty of the state board in the premises is fixed by section 3849 of Mills' An. Statutes :

" SEC. 3849. It shall be the duty of said board, in the absence of any legislation on the subject, to enter an order at its September meeting declaring what rate of taxes shall be levied for state purposes for the coming year, which in no case shall exceed the amount provided for in the constitution."

The duty of the auditor is fixed by the preceding section :

" SEC. 3848. On or before the twentieth day of September in each year the said board shall complete its equalization, and the auditor of state shall transmit to the clerk of each county a statement of the changes, if any, which have been made in the assessments, and the rate of taxes which is to be levied and collected within his county for state purposes for that year."

An examination of the law on the subject, constitutional and statutory, discloses that primarily the state board of equalization has nothing to do with the levy of taxes. The board is created for the purpose of assessing certain property and equalizing and adjusting the valuation upon all property in the state. There is one apparent exception to the above rule. This exception has reference solely to the rate to be levied for state purposes, the legislature having provided with reference to this levy that " there shall be levied and assessed upon the taxable real and personal property within the state in each year the following taxes : For state purposes

four mills on a dollar when no lower rate is directed by the state board of equalization." * * * In respect to other levies the duty of the board is merely clerical in character.

In the various arguments, oral and written, presented to this court on the part of those interested in the various special levies, it has been urged that all such levies should be accorded precedence, and the levy for general purposes be reduced to a rate to be ascertained and fixed by deducting the aggregate of the special levies from the maximum rate of four mills permitted under the constitution.

The leading case upon the subject of tax levies in this state is that of *The People ex rel. Thomas v. Scott*, 9 Colo. 422. The principal contention in that case was whether the special levies should be considered as a part of the aggregate of four mills, beyond which the legislature could not go, or whether the legislature, in its discretion, might levy a tax of four mills for general revenue in addition to the special levies for particular purposes. Upon a careful review of the subject in the light of the constitutional provisions and statutes then in existence, it was decided that the special levies were to be taken into consideration in determining the aggregate, and that such aggregate could in no event exceed four mills upon the dollar. The action was brought by the people, at the relation of the attorney general, against Scott, as county clerk of Arapahoe county, Scott having refused to extend a greater levy for general purposes than the rate of four mills on the dollar, less the rates required by law to be extended for the support of state institutions. In this position, he was sustained by the court.

While no authorities have been cited upon the question, and none have been found by the court, we think that where excessive levies have been made, the true rule is to allow the levies precedence in the order in which they were passed, giving preference when necessary to levies for the purpose of meeting appropriations for the support of the executive, legislative and judicial departments of the government, as indicated *In re Appropriations*, 13 Colo. 316.

It has been urged by the attorney general with great force that the levy for general purposes is to be preferred over all others. In support of this contention he cites the opinion *In re Appropriations, supra,* and urges that the legislature cannot by indirection do that which it is inhibited from doing directly, but we do not find it necessary to determine the question thus raised in this case, as the general levy must be maintained for another reason.

The opinion in the *Scott Case* has been cited in support of the conclusion that all special levies fixed by the legislature must first be provided for. A careful reading of the opinion in that case discloses that the special levies allowed precedence were fixed by the general assembly by acts prior to the act providing a four mill levy for state purposes, and were for this reason given a priority over the levy for general revenues. The opinion will not bear a construction which militates against fixing the priorities of all levies, including that for general revenue as of the date of the taking effect of the acts providing for the same. No question of preference as to the necessary expenses of the executive, legislative or judicial departments of the state were presented or considered in that case.

It is conceded that the power of the legislature in the premises is plenary, except as limited by the constitution. It being restricted to a levy of four mills, the question arises as to what levies shall be eliminated where, as here, an excessive levy has been made. The legislature having power to levy taxes aggregating four mills in amount, its mandates must, if not contrary to other constitutional requirements, be enforced until the four mill limit is reached. The power being then exhausted, further levies cannot be made. When the total levies aggregate more than four mills on the dollar, it is the plain duty of every officer connected with the levy and collection of the revenue to refrain from doing any act which falls within the inhibition of the state constitution. *In re Appropriations, supra ; People ex rel. Thomas v. Scott, supra.*

The levy for state purposes is as much a legislative levy as

the levy for any special purpose. It is a levy of four mills when no lower rate is directed by the state board of equalization. This, therefore, is to be treated as an absolute levy of four mills, subject to two conditions : *First*, that all prior levies, if not repugnant to constitutional requirements, shall be respected; *second*, a reservation of power in the state board of equalization to reduce the general levy. This levy is fixed by the legislature subject to the right of the state board of equalization to reduce the rate to an amount sufficient merely to meet appropriations, should the assessment justify such reduction. In determining the rate the board has only to take the appropriations and the assessment into consideration and fix a rate that will produce the required revenue.

The tax thus levied is of primary importance. It is specially provided for by the state constitution in the following unmistakable language :  " The general assembly shall provide by law for an annual tax, sufficient with other resources to defray the estimated expenses of the state government for each fiscal year." Art. X, sec. 2.

It is made the imperative duty of the legislature under this section to provide by law a tax sufficient to defray the estimated expenses of the state government for each fiscal year. Speaking of this provision this court has said:  " Considering the great care thus taken to secure and guard such appropriations, we cannot doubt that the ordinary expenses of the legislative, executive and judicial departments of the state are the expenses primarily intended to be provided for by section 2, article X." *In re Appropriations, supra.*

Aside from the character given to this levy by the constitution, we find that it is prior in point of time to many of the levies designated as " special levies." It is a mistake to suppose that this levy is to be given a date as of the act of 1891. It goes back at least to the year 1885. The former act provided that " there shall be levied and assessed upon taxable real and personal property within this state in each year, the following taxes : For state purposes four mills on a dollar,

when no lower rate is directed by the state board of equalization." Session Laws of 1885, p. 318.

The act of 1891, which purports to be an amendment of the above, is an exact rescript thereof, in so far as this levy is concerned. It must, therefore, be treated as a confirmation and continuance of 'the former act, and as having priority from the date of that act. The form of making amendments by declaring that a section shall be amended so as to read in a particular way has been a favorite one with our legislature since the organization of the state government. By it, obscurity and confusion are avoided, and the legislature is presented with the amendment and the previous act together, and intelligent action thereby aided. Of such amendments Denio, C. J., in *Ely et al. v. Holton*, 15 N. Y. 595, says: "The portions of the amended sections which are merely copied without change, are not to be considered as repealed and again enacted, but to have been the law all along." See, also, Sutherland on Statutory Construction, sec. 133.

The same is true of the act providing for a special levy of one half of a mill for capitol building purposes. A levy for this purpose first appears in the Session Laws of 1883. The erection of a state capitol building suitable for the purposes of this growing young commonwealth has been kept steadily in mind by each succeeding legislature, and levies for this purpose have been made at the same rate annually since the passage of the original act. The reasoning in connection with the levy for state purposes applies with equal force to the levy for the state capitol building, and this levy must stand as of the date of the original act in 1883.

The priority of the general levy for state purposes and the special levy for the state capitol building being thus ascertained under the principles announced, the standing of other special levies must be fixed as of the date of the taking effect of the several acts, and those levies which the legislature has attempted to authorize after the constitutional limit of four mills was reached fall under the constitutional inhibition and must be treated as void. Of these, the last in point of time

is the special levy of one tenth of a mill for the State University; the act attempting to authorize this having been approved April 8, 1893. Session Laws of 1893, p. 475.

The next in point of time is the act of 1891, entitled: "An Act to Provide for the Assessment, Levy and Collection of a State Tax, for the Support and Maintenance of Certain State Educational Institutions, Mentioned Therein; to Define the Duties of the County Treasurer in Connection Therewith; to Provide for the Election of a Treasurer of Each of Said Institutions, Define His Duties and to Repeal all Acts and Parts of Acts Inconsistent Therewith." Acts of 1891, p. 338.

By this act a levy of one sixth of one mill is provided for each of the following institutions: Agricultural College, School of Mines, Normal School and Institute for the Mute and Blind. As authority for a levy for these purposes is given in one and the same act, we cannot assume that the legislature intended to favor one of these institutions in preference to another, in the absence of words indicating such intent, but rather that all should stand on an equality; hence such reduction as may be found necessary to bring the total levy for all purposes within four mills should be made from these several levies pro rata.

We shall not attempt to determine the constitutionality of this act at this time, as several of the beneficiaries under it are not now before the court, and the necessity for an early opinion upon the other questions presented is of the greatest importance, as the time fixed for the certification of the levy has already passed. Moreover, the constitutional objection urged applies with greater force to the appropriations than to the levy, and may properly be considered hereafter, should it be presented in some appropriate proceeding.

The stock inspection tax being one of the first provided for the legislature, the board was in error in reducing the levy for this purpose from one fifteenth of one mill to one thirtieth. No justification for this reduction has been offered,

and we are unable to sustain the action of the board in respect thereto.

Our conclusion upon the other questions presented is: 1. That the action of the state board of equalization in fixing a rate of two and nine thirtieths mills for the levy for general revenue for the year 1894 was within the discretion of the board and cannot be changed by any court. 2. That the omission of the one tenth of a mill special tax for the State University was necessary in order that the total tax should be kept within the limit fixed by the constitution. 3. That it was proper to reduce the levy for the State Normal School, but that the reduction necessary should fall equally upon the four institutions named in the act, and not alone upon one.

These conclusions have not been reached without difficulty. The revenues of the state have been sadly crippled by reason of the great financial panic that has seized upon the nation, and the loss may not fall where the public interests will be injured the least. It is not, however, for the courts to correct this inequality, but to construe the various statutes according to established legal principles, and where all cannot be given effect, to at least bring order out of the confusion by determining which are entitled to preference under the law. Fortunately, the time for the biennial meeting of the legislature is near at hand, when an adjustment may be had, if found advisable.

The legislative department of the state has for many years made appropriations in excess of the limit permitted by the state constitution. As a result, confusion and litigation have followed, and the credit of the state has thereby suffered. The plan of levying special taxes for particular purposes adds to, rather than lessens the difficulty. If the legislature would marshal the assets of the state and estimate the revenue necessary to run the state government, and levy a tax in gross sufficient with the revenue derived from other sources to meet all demands upon the state treasury, the matter would be greatly simplified.

In the case of the State University, No. 3440, the peremptory writ will be denied and the proceeding dismissed. In that of the State Normal School, No. 3441, a peremptory writ of *mandamus* will issue in accordance with this opinion.

*So ordered.*