[No. 7659.]

KENDALL v. THE PEOPLE EX REL.

1. CONSTITUTIONAL LAW—*Particular Statutes*—The statute for regulating common carriers (Laws 1907 c. 208) is constitutional, though it excepts from its operation certain mountain railways. The judgment in *Consumers' League v. Colorado & Southern Company, ante, 54* followed.

2. STATUTES—*Construction*—It is the intention of the legislative body exercised within constitutional limitations that is to be ascertained and enforced. The title of an act may aid in its interpretation.

3. ——*Amendment or Repeal*—When a statute provides that a former statute shall be amended, "so as to read as follows," it is not accurate to say that the earlier statute is repealed. Where a statute is amended only in part, certain sections being re-enacted, *ipsissimis verbis*, these are considered to remain in force from the original enactment.

A statute revising a former statute, after setting forth the title of the former act, provided, in the first section, that it should be amended, and as amended re-enacted to read as follows"——setting forth in great part, a rescript of the former act, changing, adding to, and omitting some of its provisions, and concluding in these words: "All acts and parts of acts inconsistent herewith are hereby repealed. All parts of the act hereby amended and not re-enacted in this act are hereby repealed." *Held*, that the purpose of the general assembly was not to repeal the original act, but to amend it, continuing in full force the provisions which were in terms re-enacted; and that such provisions were the law from the date of the first enactment.

4. ——*Construed*—*Changing Name*, of a body politic or corporate does not destroy its identity. By an act of 1907 (Laws 1907 c. 208, sec. 11) a commission under the name of the State Railroad Commission was established, to control and regulate common carriers. By subsequent statute (Laws 1910 c. 5). The act of 1907 was revised, and in part re-enacted. In the later act the commission was designated as the "State Railroad Commission of Colorado." The terms of the several commissioners remained the same, but while under the former act the commissioners were elected by the people, by the later act, they were appointed by the governor. Their powers and duties as prescribed in the later act were the same as those set down in the former. No provision was made in the later act for disposing of the records, books and papers of the commission, nor was any provision made for preserving actions begun under the act of 1907, or the orders of the commission. *Held*, that the commission, notwithstanding the change in name was the same entity at all times.

5. ——*Statute Prescribing That Which Is Impossible*—In 1910 the respondent was lawfully elected a member of the railroad commission, under the statute then in force, for a term of six years beginning on the second Tuesday of January, A. D. 1911. He had qualified and entered upon the duties of his office. A statute which took effect after this (Laws 1910 c. 5), not repealing the act under which respondent was elected or abolishing the commission, provided that the governor should appoint a commissioner for the same term for which the respondent had been elected. The relator, claiming the office under an appointment made by the governor pursuant to this direction of the act of 1910 brought *quo warranto*. *Held*, that inasmuch as the act under which the respondent was elected was not repealed, nor the

commission abolished or changed, and as the respondent was holding under a valid election, there was no vacancy to which the power of appointment contained in the act of 1910 could apply, and that the provision conferring this authority upon the governor was without effect, because directing what was impossible.

*Error to Denver District Court.*—Hon. HUBERT L. SHATTUCK, Judge.

Mr. HORACE PHELPS, for plaintiff in error.

Mr. M. G. SAUNDERS, Mr. E. F. CHAMBERS, for defendants in error.

Mr. JUSTICE MUSSER delivered the opinion of the court:

At the general election held on the eighth day of November, 1910, Sheridan S. Kendall, the respondent below, and plaintiff in error here, was elected to the office of railroad commissioner for a term of six years, beginning on the second Tuesday in January, 1911, under the provisions of an act entitled "An act to regulate common carriers," etc., approved March 22, 1907. In section eleven of that act there was created a state railroad commission, composed of three commissioners. The section provided that the governor, by and with the consent of the senate, should appoint three commissioners to serve until the second Tuesday in January, 1909, and that at the general election to be held in November, 1908, there should be elected three commissioners for the terms of two, four and six years respectively, and that thereafter, at each biennial general election, one commissioner should be elected to serve for six years, beginning on the second Tuesday in January following his election. At the general election in 1908, three commissioners were elected, to-wit: W. L. Seely, for the term of two years, ending on the second Tuesday of January, 1911; D. H. Staley, for the term of four years, ending on the second Tuesday in January, 1913; and A. P. Anderson, for the term of six years, ending on the second Tuesday in January, 1915.

After his election, and on the second Tuesday in January, 1911, at the close of Mr. Seely's term, Mr. Kendall duly qualified and entered into the office of railroad commissioner for the term of six years. A special session of the general assembly, held in 1910, passed an act professing to amend, and as amended to re-enact, the act of 1907, and section eleven in the amendatory act, so far as the terms and selection of commissioners are concerned, reads as follows:

"That a commission is hereby created and established to be known as the "State Railroad Commission of Colorado," which shall be composed of three commissioners, who shall hereafter be appointed by the governor by and with the consent of the senate. Provided that the three commissioners who were elected in November, 1908, shall be the commissioners hereunder for the terms for which they were elected, that is to say, Worth L. Seely shall be a commissioner to serve until the second Tuesday in January, 1911; Daniel H. Staley shall be the commissioner to serve until the second Tuesday in January, 1913, and Aaron P. Anderson shall be a commissioner to serve until the second Tuesday in January, 1915; one commissioner shall be appointed by the governor to serve for six years, beginning on the second Tuesday in January, 1911, and every two years thereafter one commissioner shall be appointed for the term of six (6) years beginning on the second Tuesday in January after each general state election."

This amendatory act contained no emergency clause. It was filed in the office of the secretary of state without the approval or disapproval of the governor, and under the constitution went into effect on the 15th day of February, 1911. On the 3d day of May, 1911, the governor, assuming to act under the provisions of the amendatory statute, appointed Frank S. Hoag, the relator, to the office of railroad commissioner for the term of six years, beginning on the second Tuesday of January, 1911. After his appointment on May 3d, Mr. Hoag qualified for the position and made a demand on

Mr. Kendall for the office.  On being refused, Mr. Hoag, as relator, caused an action to be brought in the district court in the nature of *quo warranto* to oust Mr. Kendall.  This action resulted in a judgment of ouster against the latter and he now prosecutes this writ of error to review that judgment.

The relator contends:  First—That the act of 1910, by virtue of which he was appointed, became effective on February 15, 1911, and at that time operated to repeal the act of 1907, and particularly section XI thereof, and to abolish the office then held by the respondent.  Second—That the act of 1907 was unconstitutional because it exempted from its operation mountain railroads operating less than twenty miles of road, the principal traffic of which is the hauling of mineral from and supplies to mines, in that such exemption rendered the act special or class legislation inhibited by the constitution of Colorado, and denied the equal protection of the laws contrary to the federal constitution.

The relator has furnished a very elaborate brief on the constitutional questions raised, wherein his counsel with great diligence have collected many authorities, and have presented and discussed them with great learning.  We admit the law as contended for, but we are unable to apply it to the act of 1907 so as to overthrow that statute.  The constitutional questions now raised were discussed and determined, contrary to the contention of relator in case No. 7203, *The Consumers' League of Colorado v. The Colorado & Southern Railway Company et al.*  It is, therefore, unnecessary to discuss them again, and we content ourselves by holding the act of 1907 constitutional for the reasons expressed in that other opinion.

The relator contends that the act of 1910, or rather 1911, (as it went into effect in February, 1911), repealed the act of 1907, and abolished the office of railroad commissioner, to which the respondent was elected in November, 1910, so that the latter office went out of existence, and that the office and term to which relator was appointed is not the office and term to which respondent was elected and which was abolished.

In order to determine this contention it is necessary to ascertain, if possible, the intention of the general assembly that passed the act of 1911, for it is the intention of the legislative body, exercised within constitutional limitations, that is to be enforced.—*Stanley v. Little P. M. Co.,* 6 Colo. 415-419; *Arapahoe Co. v. Hall,* 9 Colo. App. 538.

In order to ascertain this intention, recourse may be had to the title, *Callahan v. Jennings,* 16 Colo. 471.

The title of the act of 1911 is: "An act to amend and as amended to re enact an act, entitled (quoting the title of the act of 1907), and to repeal all acts or parts of acts inconsistent herewith." This title evidences an intention to amend the act of 1907, and only to repeal acts inconsistent with the new act. Section 1 of the new act is as follows:

"Section 1. That an act entitled (quoting the title of the act of 1907), approved March 22, 1907, be and the same is hereby amended and as amended re-enacted to read as follows:"

Here again is an expressed intention to amend the act and not to repeal it. Section 24 article V of our constitution provides that statutes shall be amended only by re-enacting and publishing at length the portions affected by amendments, and, as said in *Callahan v. Jennings, supra:*

"This constitutional provision settles beyond peradventure the effect of amending a law with the introductory phrase, 'so as to read as follows,' or any other language showing clearly the intent only to amend. When a statute is thus amended it is not accurate to say that a repeal thereof has taken place."

It may not have been necessary to have used the words "and as amended to re-enact." Their only effect, and therefore they must have been used for that purpose, is to give added emphasis to the fact that the legislature desired the unchanged portions of the law to continue uninterrupted, for while this court has held that the unchanged portions are not to be considered as repealed and re-enacted, but as the law all along, other

courts have said that the unchanged portions are repealed and re-enacted at the same instant of time and are therefore considered to have been the law all the time. *26 A. & E. Ency. of Law*, 706. So that if to amend an act and at the same time re-enact it as amended effects a repeal, the repeal and re-enactment occur at the same instant of time and the unchanged portions are the law all along. The last section of the act says:

"All acts and parts of acts inconsistent herewith are hereby repealed. All parts of the act hereby amended and not re-enacted in this act are hereby repealed."

It was the inconsistent parts of the other act, and the parts thereof that were left out of the amendatory act that were repealed. After section 1 and following the words "to read as follows," the amendatory act begins with section 1 and proceeds largely as rescript of the old act, changing here and adding there, leaving out some provisions of the other and resectionalizing toward the close.

From all this it seems manifest that it was not the intention of the general assembly to repeal the act of 1907, but to amend it, carry it along and continue it in force except in so far as the amended act was inconsistent with and changed from the old act. The act having been thus amended it is the law of this state that, "The original provisions, in so far as they re-appear in the amended act, are to be regarded as 'having been the law since they were first enacted, and the new provisions are to be understood as enacted at the time the aemnded act took effect.'" *Callahan v. Jennings,* 16 Colo. *supra.* To the same effect is *People v. Board of Equalization,* 20 Colo. 220.

Section 11 of the act of 1907 creates the commission in these words: "That a commission is hereby created and established to be known as the state railroad commission, which shall be composed of three commissioners." Reference to section 11 of the act of 1911, quoted above, reveals that it is an exact copy of the act of 1907 with reference to the creation

of the commission, except that the words "of Colorado" are added to the name. The entity, the body politic, has not been changed, only its name. The name of a corporation may be changed, but the change in the name does not change the identity of the corporation. True, the qualifications and manner of selection of the commissioners are also changed, but that cannot change the identity of the commission. The words of creation that brought the commission into life are changed only in the name, and that life is not taken away by a change of name when the creative words have been the law all along. Thereafter, throughout the act the commission is spoken of and its powers and duties prescribed in the same words as in the original act. If the general assembly intended to abolish the commission, surely some disposition would have been made of its books, papers and records, something would have been done for the continuance of its orders, which the act provided should remain in force for a prescribed period, not exceeding two years, and something would have been said so as to preserve actions arising out of the act of 1907, or the orders of the commission. Nothing was said in the new act about these matters. We do not think that the general assembly intended to repeal the act of 1907 and abolish the commission and thereby destroy and abate all these things. We must therefore conclude that the state railroad commission of Colorado is the same entity as the state railroad commission created in 1907, and that the office of railroad commissioner has been one and the same office all the time.

The terms of the commissioners prescribed in the act of 1911 are the same terms prescribed in the original act. They begin and end at the same time. Indeed this is emphasized, for section 11 of the new act specifically says that the commissioners then in office "shall be the commissioners hereunder for the terms for which they were elected"—not for some new term. The terms, therefore, were not changed, and the law of 1907 creating them, and by virtue of which they came into existence as their natal days arrived, has been the

law all along. .Now Mr. Kendall was elected under the provisions of an existing law to an existing office for a term to begin in the future. Under that law, he entered into that office on the second Tuesday in January for an existing term. On the 15th day of February, while he was in that office for that term, a law went into effect that did not change the office, nor the term. Now it is sought to put him out by virtue of this law. That is absolutely impossible, for there is no such virtue in the law. Section 11 of the act of 1911 says that the commissioners "shall hereafter be appointed by the governor by and with the consent of the senate. * * * One commissioner shall be appointed by the governor to serve for six years, beginning on the second Tuesday in January, 1911, and every two years thereafter one commissioner shall be appointed for the term of six (6) years beginning on the second Tuesday in January after each general state election."

From this it is seen that the change made has reference only to the manner of the selection of the commissioners. The new provision is for their appointment instead of election. This new provision is to be considered as enacted at the time the amended act took effect, to-wit, on February 15, 1911,— *Callahan v. Jennings, supra*,—so that the word "hereafter has reference to a time subsequent to that date. The first appointment that could have been made after that date was to fill a vacancy should one occur. If no vacancy occurred the first appointment provided for is one for the term beginning on the second Tuesday in January, 1913. There was no vacancy in Mr. Kendall's office, and he has nothing to do with the term beginning January, 1913. The section provides that the governor shall appoint one commissioner to serve for the term of six years beginning on the second Tuesday of January, 1911. When the law went into effect that term was filled, so that it was absolutely impossible for the governor to fill it. Instead of saying that it was the intention of the act to operate on a previous election, and thus laying the provision for the appointment to Mr. Kendall's term open to an attack as being

contrary to section eleven of article II of the constitution againts retrospective laws, it is more proper "to say that the portion of the act is inoperative because it commands a thing to be done which in the nature of things cannot be done."—*Sipe v. The People,* 26 Colo. 127.

Having discussed this case at more length than was perhaps necessary, and being unable to find anything whereby to sustain the judgment of the lower court, that judgment is reversed and the cause remanded with instructions to dismiss the complaint.

<em>Reversed and Remanded with Instructions.</em>

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE WHITE not participating.

Decided May 6, A. D. 1912.   Rehearing denied July 1, A. D. 1912.