| | |
|---|---|
| 13 | 316 |
| 15 | 524 |
| 13 | 316 |
| 17 | 589 |
| 13 | 316 |
| 18 | 105 |
| 18 | 200 |
| 18 | 263 |
| 13 | 316 |
| 19 | 62 |
| 19 | 67 |
| 19 | 571 |
| 3a | 15 |
| 13 | 316 |
| 20 | 228 |
| 20 | 375 |
| 13 | 316 |
| 21 | 413 |
| 22 | 90 |
| 13 | 316 |
| 24 | 129 |
| 24 | 450 |
| 13 | 316 |
| 11a | 427 |
| 12a | 130 |
| 13 | 316 |
| f26 | 142 |
| f26 | 236 |
| 13 | 316 |
| 27 | 103 |
| 13 | 316 |
| e28 | 200 |

# IN RE APPROPRIATIONS BY GENERAL ASSEMBLY.

### ANSWERS TO INTERROGATORIES.

1. WHAT QUESTIONS COME WITHIN THE CONSTITUTIONAL PROVISION.— When questions are submitted by the executive or legislative department for the opinion of the supreme court. under section 3, article 6, constitution, the court must decide for itself whether or not it should exercise the jurisdiction of answering the same; and only questions of law *publici juris*, and not questions affecting private or corporate rights, should be thus answered.

2. CONSTITUTIONAL LIMIT OF APPROPRIATIONS FOR EXPENDITURES OF STATE GOVERNMENT.— The general assembly is inhibited, in absolute and unqualified terms, from making appropriations or authorizing expenditures for the support of the government or its institutions, in time of peace, in excess of the total tax then provided by law and applicable for such appropriation, unless such general assembly shall provide for levying a sufficient tax, within constitutional limits, to pay the same within such fiscal year.

3. UNCONSTITUTIONAL LAWS AND APPROPRIATIONS.— If the general assembly pass acts making appropriations or authorizing expenditures in excess of constitutional limits, such acts are void, and create no indebtedness against the state.

4. AUDITOR'S ESTIMATES AND JUDGMENT OF LEGISLATURE NO SUPPORT
TO ILLEGAL APPROPRIATIONS.— There is no absolute criterion by
which it can be known in advance whether an act of appropriation
will be in excess of constitutional limit. Neither the auditor's esti-
mates nor the judgment of the general assembly afford any sup-
port to such excessive appropriations; but such acts are mere
nullities.

5. CONSTITUTIONAL PROVISIONS FOR DEFICIENCIES OF REVENUE CAN-
NOT BE EXCEEDED.— Debts to provide for casual deficiencies of the
revenue cannot be contracted by the state in excess of the limit
prescribed in section 3, article 11, of the constitution. A casual
deficiency of the revenue is one that happens by chance or acci-
dent, and without design or intention to evade the constitutional
inhibition.

6. OFFICERS OF THE EXECUTIVE DEPARTMENT CANNOT RECOGNIZE IL-
LEGAL APPROPRIATIONS.— Neither the governor, auditor nor treas-
urer, nor any other officer of the executive department, can in any
way legally approve or recognize legislative acts making appropri-
ations in excess of constitutional limits. The unauthorized act of
one official is no justification or excuse for a similar act by an-
other.

7. WHAT APPROPRIATIONS ARE ENTITLED TO PREFERENCE.— Acts of
the general assembly making the necessary appropriations to de-
fray the expenses of the executive, legislative and judicial depart-
ments of the state government for each fiscal year, including
interest on any valid public debt, are entitled to preference over
any other appropriations from the general public revenue of the
state, without reference to the date of their passage, and irrespect-
ive of emergency clauses.

THE opinion is in response to the following communi-
cation and interrogatories from the governor, to which
were attached exhibits containing hundreds of different
items:

"*To the Honorable the Supreme Court of the State of
Colorado:*

"SIRS: Doubts have been suggested, both among the
members of the executive department of this state, whose
duty it is to act in relation to the matters hereinafter
mentioned, and among many citizens and tax-payers of
the state, whether the aggregate of the appropriations
made by the seventh general assembly is in excess of the
limitation fixed by the constitution of the state, particu-

larly article 10, section 16. The auditor of state is in doubt whether any warrants should be drawn on the treasurer of state for the payment of any such appropriations, because it appears that the aggregate of such appropriations is in excess of the probable total tax provided by law and applicable for such appropriations, taking the auditor's estimate of the revenue for the present and succeeding fiscal years as the basis. And, though it might be legal to draw warrants on the treasury up to the point where the auditor's estimate fixes the amount of revenue available for this purpose, it is still a question of what, if any, specific appropriations should not be recognized as valid, and where the line between the valid and invalid appropriations should be drawn. Some of the acts appropriating money from the general revenue of the state require that the executive shall approve vouchers presented to the auditor as the basis of a warrant, before the auditor shall draw such warrant. I certify, therefore, that the questions hereinafter submitted are important, and arise upon a solemn occasion, wherein the executive of this state requires the opinion of the supreme court in order to properly discharge his duties.

"I beg, therefore, to request the opinion of the honorable court in answer to the following questions:

- "*First.* What legal criterion is fixed by which it can be known at the date of an act of the legislature appropriating or authorizing the expenditure of money whether such appropriation or expenditure during any fiscal year will exceed the total tax then provided for by law, and applicable for such appropriation or expenditure?

- "*Second.* What is the duty, and what the right, of the auditor in respect to refusing to issue warrants when in his judgment the constitutional limit has been reached? And in this connection what is the effect of an emergency clause attached to a bill making appropriation of moneys, when the question arises between appropriations made on the same fund, the one being covered by an

emergency clause and the other taking effect only in accordance with the general 'rule governing statutes? Is the former, at the time of the passage of the act, such an appropriation of the moneys in such fund as will operate to render the appropriation made by the latter act good only in case the appropriation of such fund has not exhausted the same, or brought it up to the point where it is subject to the constitutional limitation?

" *Third.*　What legal effect has the auditor's estimate of the revenue for certain fiscal years in fixing the limit of appropriations that may be made for those fiscal years?

" *Fourth.*　Do the appropriations made by the seventh general assembly exceed the limit prescribed by the constitution?

" *Fifth.*　If such limit has been exceeded what appropriations are invalid, and for the payment of which, if any, will the auditor be justified in refusing to draw a warrant on the treasurer?

"I transmit herewith an itemized statement of the appropriations above referred to, and also the auditor's estimate of the probable revenue for the years 1889 and 1890.

"I have the honor to be, very respectfully, your obedient servant,　　　　　　　　Job A. Cooper,

"Governor."

The following extracts from the constitution of the state are referred to in the opinion:

Art. 6, § 3:　" The supreme court shall give its opinion upon important questions upon solemn occasions when required by the governor, the senate or the house of representatives; and all such opinions shall be published in connection with the reported decisions of said court."

Art. 4, § 12:　" The governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be law, and the item or items disapproved shall be void, unless," etc.

Art. 5, § 19: "No bill, except the general appropriation for the expenses of the government only, introduced in either house of the general assembly after the first thirty days of the session, shall become a law." Amend't of Nov. 4, 1884.

*Id.* § 21: "No bill, except general appropriation bills, shall be passed, containing more than one subject, which shall be clearly expressed in its title."

*Id.* § 32: "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

Art. 10, § 2: "The general assembly shall provide by law for an annual tax, sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year."

*Id.* § 11: "The rate of taxation on property, for. state purposes, shall never exceed six mills on each dollar of valuation; and whenever the taxable property within the state shall amount to $100,000,000, the rate shall not exceed four mills on each dollar of valuation; and whenever the taxable property within the state shall amount to $300,000,000, the rate shall never thereafter exceed two mills on each dollar of valuation, unless," etc.

*Id.* § 16: "No appropriation shall be made, nor any expenditure authorized, by the general assembly, whereby the expenditure of the state, during any fiscal year, shall exceed the total tax then provided for by law, and applicable for such appropriation or expenditure, unless the general assembly making such appropriation shall provide for levying a sufficient tax, not exceeding the rates allowed in section 11 of this article, to pay such appropriation or expenditure within such fiscal year. This provision shall not apply to appropriations or expenditures to suppress insurrection, defend the state, or assist in defending the United States in time of war."

Art. 11, § 3: "The state shall not contract any debt by loan, in any form, except to provide for casual deficiencies of revenue, erect public buildings for use of the state, suppress insurrection, defend the state, or, in time of war, assist in defending the United States; and the amount of the debt contracted in any one year to provide for deficiencies of revenue shall not exceed one-fourth of a mill on each dollar of valuation of taxable property within the state, and the aggregate amount of such debt shall not at any time exceed three-fourths of a mill on each dollar of said valuation until the valuation shall equal $100,000,000, and thereafter such debt shall not exceed $100,000; * * * and in all cases the valuation in this section mentioned shall be that of the assessment last preceding the creation of said debt."

S. W. Jones, attorney-general, Mr. H. Riddell and Mr. John Dewitt Peltz, *amici curiæ*.

Mr. Justice Elliott delivered the opinion of the court.

The determination by this court of the various questions propounded in this case must affect in a large degree many private as well as public interests. We deem it proper, therefore, at the outset, to call attention to the construction already given to section 3, article 6, constitution, in relation to questions submitted by the executive and the general assembly. See opinion, *per curiam*, in 9 Colo. 620, concerning irrigation; also opinion by Chief Justice Helm, filed April 5, 1889, in response to a resolution requesting a construction of the provisions of senate bill No. 65, 12 Colo. 466. The latter opinion was announced after much consideration, and is authority for saying that this court must decide for itself, as to any given question, whether or not it should exercise the jurisdiction of answering the same; and that only questions of law *publici juris*, and not questions affecting private or corporate rights, should be thus answered. That de-

cision was based upon the fundamental doctrine that for this court to answer questions of the latter class, *ex parte*, would inevitably result in disposing of the rights or claims of litigants without due process of law, without counsel, and without allowing them their day in court. Having been thus guarded against expressing our views concerning the provisions of a pending bill which had not received, and might never receive, the legislative sanction, we should be doubly careful in discussing acts of the general assembly after they have received the approval of the executive.

The questions submitted in this case are of two kinds — questions of fact and questions of law. It can hardly be expected that we should respond to the former. As to the questions of law presented, we shall endeavor to answer the same, so far as we can do so, by the announcement of general principles, without unduly prejudging private or corporate rights.

By section 16, article 10, of the constitution, appropriations and expenditures which may be made or authorized by the general assembly are of two general classes: *First*, ordinary, which include all kinds of appropriations and expenditures necessary and proper for the support of the government and its institutions in time of peace; *second*, extraordinary, or such as are necessary " to suppress insurrection, defend the state, or assist in defending the United States in time of war." In this opinion we have only to consider such as belong to the former or ordinary class. By said section 16, each and every general assembly is inhibited, in absolute and unqualified terms, from making appropriations or authorizing expenditures of the former class in excess of the total tax then provided by law, and applicable for such appropriation or expenditure, unless such general assembly shall provide for levying a sufficient tax, within constitutional limits, to pay the same within such fiscal year. This language needs no construction. It is plain, simple and

unambiguous. It need not be misunderstood. It cannot be evaded. It means that the state cannot be plunged into debt by unauthorized legislation. If the general assembly pass acts making such appropriations or authorizing expenditures in excess of constitutional limits, such acts are void. They create no indebtedness against the state, and entail no obligation, legal or moral, upon the people, or upon any future general assembly. In the language of Mr. Justice Allen, of the New York court of appeals, cited below: "Neither the legislature nor the officers and agents of the state, nor all combined, can create a debt or incur an obligation for or in behalf of the state, except as to the amount and in the manner provided for in the constitution." Cooley, Const. Lim. 69, 70; *People v. May*, 9 Colo. 85; *Lake Co. v. Rollins*, 9 Sup. Ct. Rep. 652; *People v. Johnson*, 6 Cal. 499; *People v. Supervisors*, 52 N. Y. 563.

We are asked what legal criterion is fixed by which it can be known, at the date of an act appropriating or authorizing the expenditure of money, whether such appropriation or expenditure will be in excess of the prescribed constitutional limits. We answer that there is no absolute criterion which can be relied upon in every instance and under all circumstances. The general assembly must, of necessity, exercise their own judgment in the first instance. But it must not be inferred from this, as some have supposed, that appropriations and expenditures which have been approved by the judgment of the general assembly as being within constitutional limits are therefore valid; for that would be to subordinate the positive requirements of the constitution to mere legislative control. It is absurd to say that a provision of the constitution, expressly designed to restrain and confine legislation within certain definite limits, is nevertheless subject to the unrestrained legislative will. Hence, while the general assembly must exercise their own judgment in the first instance, yet if, by reason of

error of judgment, or for any other cause, they exceed the constitutional limit in making appropriations or in authorizing expenditures, such excessive acts are mere nullities. *People v. Supervisors, supra; Williams v. Louisiana,* 103 U. S. 645; *People v. May,* 9 Colo. 412.

Though the general assembly must rely largely upon estimates in making appropriations, yet they are not without suitable guides for all practical purposes. They are clothed with ample powers for securing the most accurate and reliable information concerning the public revenue; and the sources of such information are numerous and easy of access. The auditor's estimates, contained in his biennial report to the governor, as required by section 1373, General Statutes, should be of great assistance; but they are not conclusive, and, if erroneous, afford no support to illegal appropriations. The appropriations for ordinary purposes generally extend through a period of only two fiscal years. The fiscal year commences on the 1st day of December (Gen. St. § 1403), one month prior to the beginning of the legislative session. The general assembly, composed of representatives from all parts of the state, aided by the records and reports of state and county officers for preceding fiscal years, with power to take testimony and send for persons and papers, should be able to make such estimates that, with reasonable economy, all necessary expenditure may be provided for without transcending the constitutional limit. Illegal appropriations should be carefully avoided, inasmuch as they seriously damage, though they cannot wreck, the credit of the state; for, while they create no valid indebtedness, yet it cannot be denied that they tarnish the reputation of the government for business integrity and fair dealing, and are greatly injurious to the public welfare.

It has been suggested that the practice heretofore has been to make appropriations for the calendar instead of the fiscal year. This is not the method contemplated by

the constitution, as is clearly manifest from several sections relating to the subject. Art. 10, §§ 2, 16. A more careful adherence to the constitutional method would undoubtedly prove advantageous, by making the line of demarkation between legitimate and excessive appropriations more easily discernible.

It will be observed that appropriations and expenditures for ordinary purposes are legitimate so long as they do not exceed the total tax already provided by law, and applicable for their payment, or which may, within constitutional limits, be so provided for their payment within the proper fiscal year. But it must not be overlooked that tax levies are seldom or never collected in full. Hence the appropriations and expenditures for each fiscal year must, if possible, be kept below the total amount of taxes levied for such fiscal year, so as to leave a margin equal to the loss which experience has shown will occur on account of delinquent taxes; otherwise a deficit will occur in the treasury, and a constantly increasing indebtedness will inevitably result. It may be said that section 3, article 11, of the constitution was designed to provide for deficiencies of this kind. But it will not do to depend upon the remedy therein provided. It is better to avoid a precipice than to take the risk of an injury by being too venturesome. Prevention is better than cure. At most, the relief which can be obtained under section 3 is very small, and can never exceed $100,000. Besides, it must not be supposed that such remedy can be made available, except to provide for a valid indebtedness occasioned by "casual deficiencies of revenue." No appropriation or expenditure in excess of the constitutional limit, as above explained, can be thus provided for. A casual deficiency of the revenue is one that happens by chance or accident, and without design or intention to evade the constitutional inhibition. *Hovey v. Foster* (Ind.), 21 N. E. Rep. 41.

What we have said of the legislative department in respect to making appropriations or authorizing expendi-

tures in excess of constitutional authority applies with equal force to the executive department in recognizing or dealing with legislation affecting the public revenue. If legislative acts making appropriations in excess of constitutional limits have unfortunately received the governor's signature instead of his veto, he should nevertheless withhold his approval from any and all vouchers relating to such unconstitutional appropriations. So, also, the auditor should refuse to draw any warrant therefor, and the treasurer should decline to make payment thereon. In reference to matters arising under enactments clearly unconstitutional, the unauthorized act of one government official is no justification or excuse for a similar act by another. The character and scope of the interrogatories submitted compel us to speak thus plainly upon these points.

We have heretofore spoken of the ordinary appropriations and expenditures which may be made or authorized by the general assembly as including all such as are "necessary and proper for the support of the government and its institutions in time of peace." Chief among the necessary appropriations are such as are sufficient to defray the estimated expenses of the state government for each fiscal year. This is the primary purpose for which an annual tax is required. It is made the imperative duty of the general assembly, by the express terms of the constitution, to provide by law for such a tax (art. 10, § 2), though the rate of taxation therefor must not exceed the limitation specified in section 11 of the same article. Having provided a revenue for a specific purpose, in obedience to the constitutional mandate, it is manifest that the fund cannot be diverted to other objects until the primary purpose of its creation is satisfied. It would be trifling with a serious provision of the constitution to hold that the obligation to provide a tax for a given purpose is imperative, but that the appropriation of the fund arising from such tax is optional.

Other provisions of the constitution are in harmony

with this view. Referring to article 5, we find that section 32 provides for a general appropriation bill, which may embrace the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools, while all other appropriations must be made by separate bills, each embracing but one subject; section 21 restricts every bill, except general appropriation bills, to one subject, which shall be, clearly expressed in its title; and section 19 allows the general appropriation bill for the expenses of the government to be introduced at any time, though all other bills must be introduced during the first thirty days of the session. Section 12, article 4, is also specially applicable to general appropriation bills. The governor is thereby empowered to disapprove of any item or items contained in such appropriations, and to approve the residue of the bill. This shows a clear purpose to invest the executive with discretion to save such appropriations as are necessary to defray the expenses of the government, without the danger of incumbering or defeating them by excessive or improvident expenditures.

Considering the great care thus taken to secure and guard such appropriations, we cannot doubt that the ordinary expenses of the legislative, executive and judicial departments of the state are the expenses primarily intended to be provided for by section 2, article 10. It would be a deplorable condition of affairs if, by making excessive appropriations, or by authorizing improvident expenditures, under enactments containing emergency clauses, the constitutional limit should be reached before the passage of appropriations indispensable for the support and maintenance of the several departments of the government, whereby the latter appropriations should be rendered unconstitutional. We must not be understood as expressing any fear that the general assembly would intentionally attempt any such thing, though it might

happen through inadvertence, if a different construction were given to the constitutional provisions under consideration.

In view of the examination we have given the subject, we are of the opinion that acts of the general assembly making the necessary appropriations to defray the expenses of the executive, legislative and judicial departments of the state government for each fiscal year, including interest on any valid public debt, are entitled to preference over all other appropriations from the general public revenue of the state, without reference to the date of their passage, and irrespective of emergency clauses.   We do not mean, as has been claimed, that such appropriations are valid, if they exceed the limit prescribed by section 16, article 10; nor have we considered what item or items would be entitled to the preference in case such appropriations in the aggregate should be in excess of such constitutional limit.   Such a question is not presented in the case before us, and we trust such a contingency may never occur.

The public school fund of the state is inviolate.   It is protected from all invasion by sundry constitutional safeguards, and therefore is not included within the purview of this opinion.

Appropriations other than those necessary to defray the expenses of the state government, and to pay the interest on the public debt, as above explained, and being such as are proper to foster and maintain public institutions and public improvements, may be made by the general assembly to the extent of the surplus over and above the amount required for the necessary appropriations aforesaid: provided, always, that the aggregate of such appropriations, when added to the necessary appropriations aforesaid, do not exceed the limits prescribed by section 16, article 10, constitution.   In case such appropriations overrun the constitutional limit, the question of preference between conflicting claimants would

almost necessarily involve important private and corporate rights, and therefore should not be decided in an opinion like this, even though some considerations *publici juris* may also be involved, but should be left for adjudication in the ordinary course of judicial proceedings.

We do not deem it proper to further extend this opinion. In answering the interrogatories submitted, so far as we have felt at liberty to go, we have endeavored to be specific and guarded in our language,— specific, so as not to be misunderstood; guarded, lest, being unaided by the vigilance of opposing counsel, some provision of the constitution or law might be overlooked, and erroneous conclusions reached.

The thanks of the court are due to Honorable S. W. Jones, attorney-general; H. Riddell, Esq., of Breckenridge; and John Dewitt Peltz, Esq., of Colorado Springs, for the presentation of valuable briefs *amici curiœ*, in response to our invitation.