### [No. 3829.]

### IN RE STATE BOARD OF EQUALIZATION.

1. TAXATION—CONSTITUTIONAL LIMITATION—EXPENDITURES TO SUPPRESS INSURRECTION.

That portion of the public debt created to meet expenditures to suppress insurrection does not fall within the limit of sec. 11, art. X of the constitution limiting the rate of taxation for state purposes to four mills on each dollar of valuation.

2. SAME.

In the absence of a limitation in the constitution, the power of the general assembly in matters of taxation is plenary. There being no such restriction upon taxation for suppressing an insurrection, the legislature may appropriate any sum required for such purpose, and levy any rate necessary to pay the same.

3. SAME—INSURRECTION BONDS.

Sec. 3, art. XI of the constitution, gives to the general assembly power to contract a debt by loan, which may be evidenced by bonds, to

provide for appropriations made to suppress an insurrection. No limit is fixed for the amount of such indebtedness.

4. SAME.

The legislature may levy a special tax, if necessary, in excess of, and in addition to, the four mill rate for state purposes, to pay the interest and principal of insurrection bonds.

5. CAPITOL BUILDING AND CASUAL DEFICIENCY BONDS.

Indebtedness contracted and bonds issued for the capitol building and to meet casual deficiencies in the revenue of the state, fall within the ordinary, not the extraordinary, expenses of the state, and a tax levied to pay the interest and principal of such bonds must be included in, and form a part of, the four mills general levy for state purposes.

6. TAXATION—ORDINARY AND EXTRAORDINARY PURPOSES.

The purpose, whether ordinary or extraordinary, *for* which, and not the authority, whether the general assembly or the people, *by* which, a state debt is created, is the true test for determining whether its payment is to be provided for by taxation, within, or beyond, the rate prescribed by the constitution for state purposes.

THE opinion is in response to a communication of the governor in which is propounded this interrogatory:

"In view of the several constitutional and statutory provisions, is it lawful for the board of equalization to levy, and of the several county assessors to extend upon the tax rolls, and of the several county treasurers to collect, a special tax sufficient to pay the interest upon the bonded indebtedness of the state, in addition to, and in excess of, the levy of four mills upon each dollar of valuation?"

Accompanying this communication is a statement of facts to the effect that there is an outstanding bonded indebtedness of the state as follows:

| | |
|---|---:|
| Capitol building bonds, . . . . | $600,000 |
| Casual deficiency bonds, . . . . | 100,000 |
| Insurrection bonds, already issued and soon to be issued, about, . . . . | 270,500 |
| Making a total bonded indebtedness of, | $970,500 |

The interest charges upon these bonds for the year 1897, to be met by taxation are approximately $37,000.

The constitutional provisions in point are the following:

## "ARTICLE X.

"Sec. 11. The rate of taxation on property, for state purposes, shall never exceed four mills on each dollar of valuation." Session Laws, 1891, p. 60.

"Sec. 16. No appropriation shall be made nor any expenditure authorized by the general assembly whereby the expenditure of the state during any fiscal year shall exceed the total tax then provided for by law and applicable for such appropriation or expenditure unless the general assembly making such appropriation shall provide for levying a sufficient tax not exceeding the rates allowed in section eleven of this article to pay such appropriation or expenditure within such fiscal year. This provision shall not apply to appropriations or expenditures to suppress insurrection, defend the state, or assist in defending the United States in time of war."

## "ARTICLE XI.

"Sec. 3. The state shall not contract any debt by loan in any form except to provide for casual deficiencies of revenue, erect public buildings for use of the state, suppress insurrection, defend the state, or, in the time of war, assist in defending the United States; and the amount of the debt contracted in any one year to provide for deficiencies of revenue shall not exceed one-fourth of a mill on each dollar of valuation of taxable property within the state, and the aggregate amount of such debt shall not at any time exceed three-fourths of a mill on each dollar of said valuation until the valuation shall equal one hundred millions of dollars, and thereafter such debt shall not exceed one hundred thousand dollars, and the debt incurred in any one year for erection of public buildings shall not exceed one-half mill on each dollar of said valuation, and the aggregate amount of such debt shall never at any time exceed the sum of fifty thousand dollars (except as provided in section five of this article), and in all cases the valuation in this section men-

tioned shall be that of the assessment last preceding the creation of said debt.

" Sec. 4. In no case shall any debt above mentioned in this article be created except by a law which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged ; such law shall specify the purposes to which the funds so raised shall be applied, and provide for the levy of a tax sufficient to pay the interest on, and extinguish the principal of such debt within the time limited by such law for the payment thereof, which in the case of debts contracted for the erection of public buildings and supplying deficiencies of revenue, shall not be less than ten nor more than fifteen years, and the funds arising from the collection of any such tax shall not be applied to any other purpose than that provided in the law levying the same ; and when the debt thereby created shall be paid or discharged, such tax shall cease, and the balance, if any, to the credit of the fund, shall immediately be placed to the credit of the general fund of the state."

Section 5 authorizes a debt beyond the $50,000 allowed by section 3, but not exceeding in the aggregate three mills on each dollar of valuation, provided the people at a general election ratified the same.

ATTORNEY GENERAL BYRON L. CARR, Mr. CALVIN E. REED, Mr. HARVEY RIDDELL, Mr. J. W. McCREERY, Mr. HUGH BUTLER, Messrs. ROGERS, CUTHBERT & ELLIS, and Mr. JAMES H. PERSHING, appeared as *amici curiœ*.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

In *People ex rel. Thomas v. Scott*, 9 Colo. 422, the leading case, this court held that for all state purposes the levy could not exceed the limit fixed by section 11 of article 10, which, since the amendment adopted in 1892 (Session Laws, 1891, p. 90 ; 3 Mills' Ann. Stats. p. 68, sec. 446) is four mills on each dollar of valuation.   In the subsequent cases of *In re*

*Appropriations,* 13 Colo. 316, *People v. Board of Equalization,* 20 Colo. 220, *Goodykoontz v. The People ex rel.,* 20 Colo. 374, and *Parks v. Soldiers' and Sailors' Home,* 22 Colo. 86, the doctrine of the leading case has been expressly approved. An examination of all these cases shows that the court had under consideration only ordinary, as distinguished from extraordinary, expenses of the state government. In *In re Appropriations, supra,* Mr. Justice Elliott, speaking for the court, says:

"By section 16, article 10, of the constitution, appropriations and expenditures which may be made or authorized by the general assembly are of two general classes: *first,* ordinary, which includes all kinds of appropriations and expenditures necessary and proper for the support of the government and its institutions in time of peace; *second,* extraordinary, or such as are necessary 'to suppress insurrection, defend the state, or assist in defending the United States in time of war.' In this opinion we have only to consider such as belong to the former or ordinary class."

That portion of the public debt created to meet expenditures to suppress insurrection clearly falls within the second class. We might stop here, and content ourselves merely by saying that, in the nature of things, such a debt is necessarily outside of those provisions applicable to expenditures of the ordinary class; but, as will appear, the same result follows from a reasonable interpretation of the provisions of our constitution above cited.

It is a familiar principle that, if consistent with rational rules of construction, effect must be given to all the provisions and all the words of a constitution, and that construction is to be avoided which destroys or nullifies any portion thereof. Let this principle be applied to the case now before us.

The general subject of article 10 of the constitution is revenue. Under section 16 thereof the general assembly may not make any appropriation or expenditure of its revenue beyond the total tax then provided for by law and applicable to that particular purpose, unless it shall provide for

levying a tax sufficient to pay such appropriation or expenditure, and this tax must be within the limit of four mills prescribed in section 11 of the same article. This section, however, in express terms, excepts from its operation expenditures and appropriations made to suppress insurrection, etc. In the absence of a limitation in the constitution, the power of the general assembly in matters of taxation is plenary. There being in that instrument no such restriction upon taxation for suppressing an insurrection, either as to the amount, or the rate of taxation, the legislature may appropriate of its revenue, to be derived from direct taxation, any sum required for such purpose, and levy any rate of tax necessary to pay the same.

Passing now to section 3 of article 11, we find that it gives to the general assembly power to contract a debt by loan, which may be evidenced by bonds, to provide for appropriations made to suppress an insurrection. As might be expected, no limit in this section is fixed to the amount of the debt so evidenced by bonds, and in this respect there is preserved entire harmony with section 16 which authorizes unlimited appropriations to be raised by direct unlimited tax without the intervention of a loan.

To make effective the power to contract a loan, it was, of course, necessary that some provision should be made for its payment; and so, in section 4 of article 11, there is conferred upon the general assembly a power, correlative to the power to contract the debt, to levy a tax sufficient to pay the interest and principal thereof, as the same fall due.

Were it not that, by express exception found in section 16, expenditures and appropriations to suppress insurrection were not limited to the rate of taxation allowed in section 11 of the same article, it might be contended that the *sufficient* tax, authorized by section 4 of article 11 to pay such a debt evidenced by such a loan, was still within the purview of section 11. But as the expenditures and appropriations themselves, to pay which the debt by loan was created, are not limited in amount, or in the rate of taxation for direct

payment, the general assembly, in order to pay the loan, which is only a previous indebtedness in another and different form, is not restricted to the rate of taxation provided for ordinary state purposes. In other words, in paying the costs of an insurrection, etc., the general assembly is not limited, either as to the amount of the expenditures and appropriations therefor, or in the rate of taxation to pay the same and the interest thereof, whether the debt created for that purpose is in the form of certificates of indebtedness, or warrants, or has been converted into a debt by loan and funded into bonds. The same freedom from constitutional limitations upon the legislature attends a debt created for this extraordinary purpose, irrespective of the form or evidence of such debt.

We are asked by the attorney general in argument to apply to the capitol building and casual deficiency bonds the same principle. Our attention is called to the fact that provision for the issuing of these and insurrection bonds is made in the same section, and from this it is argued that bonds of the former character, within the limit as to amount which the section itself fixes, are, and should be, on the same basis as insurrection bonds. But in our judgment there is a valid and clearly defined distinction between them. Those for the capitol building and casual deficiency of the revenue are for the ordinary, not the extraordinary, expenses of the state, and are within the first, rather than the second, classification made in *In re Appropriations, supra.* At least, they do not come under the second class. Appropriations and expenditures for such purposes are not (as are appropriations and expenditures to suppress insurrection) excepted by section 16 of article 11 from the four mill rate, and when bonds for such purposes are issued, the same incidents, as to the rate of taxation to raise a fund for their payment, should govern, as if the money were raised by a direct tax in the first instance. Because the same section of the constitution provides for issuing bonds for all three of these classes of indebtedness, should not lead us, by construction,

to. include within the exception of section 16 that class of indebtedness incurred for the ordinary expenses of the government, when, and merely because, such indebtedness has been funded into bonds.

Without any direct mention or argument to support it, the doctrine which we announce in this case with respect to the casual deficiency and capitol building bonds was, as to the latter, assumed to be correct by this court in *People v. Board of Equalization, supra.*

In that case the state board of equalization had levied taxes amounting to four mills on the assessed valuation. Included therein was a tax of four thirtieths of a mill for interest on capitol building bonds. In addition to this four mill levy, and in an act later in time than the acts providing the levies aggregating four mills, the general assembly had provided for a special tax of three thirtieths of a mill for the state university, which the state board refused to make, because the total levy was in excess of four mills. This refusal was sustained. But, had it been supposed that the levy to meet the interest on the capitol building bonds might be in excess of, and in addition to, the four mill rate prescribed for state purposes, this special tax for the university could have been, and should have been, levied. Yet such was not the conclusion of this court; the ruling being that this levy of three thirtieths of a mill for the state university was void because the four mill rate, including the levy for the capitol building bonds, had been reached before the special tax for the university was laid. The same principle applies to the casual deficiency bonds, and our former ruling is, therefore, extended to them.

From the foregoing it follows that, in order to pay the interest and principal of the "insurrection" bonds, the general assembly has the power to levy, and the various county assessors to extend upon the tax rolls, and the several county treasurers to collect, a special tax, if necessary, in excess of, and in addition to, the four mill rate for state purposes. That is, after it has levied the four mills for ordinary state purposes, it may, if necessary, levy an additional tax suffi-

cient to pay the interest and principal of these insurrection bonds, as they fall due. The levy to raise the principal and interest on the capitol building bonds and the casual deficiency bonds, however, must be included within the general levy of four mills for state purposes.

We are also asked what special levies should be reduced by the board of equalization in case the four mill levy does not produce sufficient revenue to pay all the appropriations. For several reasons we must decline to answer. The various institutions whose rights are involved are not before the court, and they should not be concluded without a hearing. *In re Appropriations, supra.* The data furnished in this communication are not sufficient to justify an attempt to decide this point. Further than this, the general assembly (Session Laws, 1897, p. 21) has passed an act to regulate the payment of appropriations in case of a deficiency of revenue, and we do not feel called on, at this time, to explain or interpret its provisions.

Chief Justice Hayt did not participate in this decision.

PER CURIAM. We are asked to grant a rehearing, or modify the foregoing opinion, so as to exempt from the operation of that section of the constitution limiting the rate of taxation to four mills for all state purposes, the capitol building bonds. The gist of the argument is, that this limitation is mandatory only on the general assembly; that since there is no authority for the issue of capitol building bonds, in excess of $50,000, unless the law providing for their issue be first ratified by a vote of a majority of the qualified electors of the state, there should be, and is, no limitation upon the rate of taxation for their payment when their issue has thus been ratified.

It is true, that the limitation is one upon the general assembly, and it may also be, and doubtless is, true that the people, the makers of the constitution, are superior to their own creation; but it is not true, in the sense contended for, even that the people themselves, except by revolution, can amend or repeal the work of their own creation otherwise

than in accordance with the method for that purpose which they, themselves, have prescribed. If the contention of the attorney general should be maintained, then the $50,000 of capitol building bonds which the general assembly may issue, and have issued, without a vote of the people, would be attended with incidents different from those attaching to all bonds in excess of that amount and ratified by a vote of the people. Both issues are exactly for the same purpose, and both have exactly the same legality, as binding obligations of the state. Why one should be preferred, in any of its incidents, to the other is difficult to perceive. The only reason assigned is, that the one issue is stamped with the approval of the sovereign people by their direct vote, while the other is not. But authority for that other issue is equally, though indirectly, that of the people, for they have, in the first instance, authorized it through the act alone of their agent and representative, the general assembly. And this difference, in the conditions to be observed precedent to the respective issues, when the purpose and object of both are the same, should not be attended with different incidents.

The purpose, whether ordinary or extraordinary, *for* which, and not the authority, whether the general assembly or the people, *by* which a state debt is created, has always been the test applied by this court for determining whether its payment is to be provided for by taxation within, or beyond, the rate prescribed by the constitution for state purposes. For years, and since the first announcement of this rule by this court, all the departments of government, and the people, themselves, have so understood, and we see no reason, now, for changing the rule. That difficulty is encountered by the state board of equalization in making the total amount of taxes produced by a four mill levy pay all appropriations, is no reason for overriding that mandatory section of the constitution either by the board or by this court. The remedy, as often pointed out, is either for the general assembly to lessen appropriations, or to bring about an increase of the valuation for state purposes.