## Meyer v. Board of Co. Comrs. of Lake Co.

*District Court of Garfield County—January, 15, 1900.*

E. F. Richardson for plaintiff. Charles Cavender, H. B. Johnson and W. H. Bryant for defendants.

RUCKER, J. (after stating the facts as above) :

Now at this day the court, after a careful consideration of the evidence and objections thereto, finds that some of the objections to the evidence seem to be well taken, under the rule as stricly construed in many cases. But under the pleadings, and in view of the statement of defense in this case, the rule will not be applied. The indebtedness was contracted by the Board of County Commissioners at a time it had no power to contract any indebtedness, as declared by that part of Section 6, of Article 11, of the Constitution, to wit:

\* \* \* "And the aggregate amount of indebtedness of any county for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not, at any time, exceed twice the amount above limited, unless when, in manner provided by law, the question of incurring such debt shall at a general election be submitted to such of the qualified electors of such county, as in the year last preceding such election, shall have paid a tax upon property assessed to them in such county, and a majority of those voting thereon shall vote in favor of incurring the debt." \* \* \*

In the interest of justice to the people of Lake county, the court will disregard apparent informalities and technicalities, if necessary for their protection against unauthorized acts of public officers, committed in violation of the constitution which they were solemnly sworn to support.

We deem it to be the duty of the court to accept the evi-

dence as being the only record made by the board in 1879, 1880 and 1881, concerning their acts in the matter, and to closely scrutinize the evidence, and ascertain whether or not the board exceeded its authority.

If we are not permitted to receive such evidence, then the people are deprived of ever showing wrongs perpetrated by its public officers, whether such wrongs are done inadvertently or from dishonest and corrupt motives; and courts of justice should be abolished.

Believing that in thise case we are justified in giving a liberal construction to the law concerning the county records, by holding that the evidence is a sufficient compliance with the law, for the purpose of arriving at the merits of this case, the objections are overruled, and plaintiff's exceptions noted.

And having considered this cause, and carefully examined the authorities cited, the court finds that the funding bonds and coupons cut therefrom, and the warrants for which they were exchanged, are presumed to be valid and legal obligations, until the contrary is proven. Lake County v. Standley, 24 Colo. 1.

The defendant admits the genuineness and due execution of the warrants, bonds and coupons; and to overthrow the presumption of validity, introduced said evidence to prove that the constitutional limitation of indebtedness had been reached and exceeded by Lake county, prior to contracting the debt for which said warrants issued and were exchanged for said bonds and coupons.

To determine whether or not defendant has made proof, it becomes necessary to examine the evidence in detail.

The County Clerk's Account Book is a record of the county, kept by the Clerk. It contains the semi-annual settlements between the County Commissioners and the County Treasurer.

It appears that statements of the financial condition of the county are made up by the County Treasurer in duplicate, and when the semi-annual settlement is perfected, it is entered upon the books of the County Treasurer, and also entered in this book, by the County Clerk, who is *ex-officio,* the Clerk of the Board (1 Mills Ann. St., §§ 933, 829). Both of such books must be considered of original entry, and either might properly be evidence of such settlement. Its contents show a sufficient compliance with the law, and as a record of the county, must be regarded as *prima facie* evidence.

The Warrant Register is a book kept by the Clerk, in which

to register the date, amount, number and name of the person to whom warrants are issued.

The Record of Proceedings is a book kept by the Clerk, in which to record the proceedings of the Board of County Commissioners. (1 Mills Ann. St., § 832). It contains, among other things, the orders, resolutions and proceedings of the board, concerning the claims, warrants and funding bonds to be considered in this case.

The Bond Register is kept by the County Treasurer, and contains the number of each bond, in the order issued, to whom issued, and for what amount. It is a county record, kept as required by law.

The Original Bills or Claims are statements of accounts or demands against the county. By the aid of the tabulated statement, we have been saved much time and labor, and been able to determine, with certainty, the time when indebtedness was contracted, the nature and amount of such indebtedness.

The warrant statement was identified by R. H. Stanley (who as County Treasurer countersigned the funding bonds) as having been received in his office. Mr. Stanley identified the indorsements on the statement as being in the handwriting of his deputy. He further testified that warrant holders presented just such statements, together with warrants corresponding thereto, when the exchange for funding bonds was made; and when he settled with the county for the bonds, he turned over such statements, together with warrants, to the Clerk of the Board.

Mr. Phillips testified that as Clerk he found the statement and the warrants corresponding in number and amount thereto in one package, among the county records in his office.

From this mass of testimony we have endeavored to ascertain the constitutional limitation of indebtedness at the time the indebtedness represented by the coupons was contracted

The limitation, as prescribed by section 6, article 11 of the constitution as to Lake county, went into effect on September 1, 1879. At that time the outstanding indebtedness of the county, as shown by the Warrant Register, amounted to about $47,110.72. These warrants, and all other warrants issued for indebtedness contracted before September 1, 1879, are conceded to be valid. After September 1, 1879, and up to September 1, 1880, the total limit of indebtedness which the county could have outstanding without a vote of the people was about $20,913.76.

The Bills and Warrant Register shows that between Sep-

tember 1, 1879, and January 1, 1880, warrants had been issued for indebtedness amounting to about $5,000 more than the limit. After January 1, 1880, and before September 1, 1880, this amount was increased by the issue of warrants representing about $32,-066.35, making a total of about $37,066.35. On the 1st of September, 1880, the county, by increased valuation, was authorized to have, without a vote of the people, a debt of only about $33,-379.46.

The Bills and Warrant Register shows that between September 1, 1880, and January, 1881, the county had an indebtedness of about $49,000, and before the 1st day of September, 1881, its indebtedness increased so rapidly and to such extent that is shown by the record.

The Board of County Commissioners advertised for statements from warrant holders who were willing to exchange their warrants for funding bonds.

That on December 27, 1881, the board had received such statements to the amount of $500,000.

The record shows that bonds to the amount of $500,000 were exchanged for warrants representing $500,000 of indebtedness.

By the Bond Register it is shown that funding bonds were issued to Herman Beeger for $9,400, in exchange for the identical warrants mentioned in the statement, and found by the Clerk among the county records. Said statement shows that it was an offer from Herman Beeger, or some person for him, to exchange warrants aggregating in amount $9,400; and when we compare the numbers, amounts and date of registration referred to in the statement, with the entries in the Warrant Register, and entries in the Bond Register, there can be no doubt but what the warrants offered in evidence are the identical warrants exchanged by Herman Beeger for the bonds from which the coupons in this case were cut.

As it is conceded that warrant No. 422, for $410, No. 1656, for $180, No. 7335, for $80.60, and No. 1548, for $10, were issued for a valid indebtedness, it is not necessary to further consider them.

By the aid of the tabulated statement, we are able to determine from the original bills, to a certainty, when and with whom the indebtedness was contracted, as represented by the other warrants which were exchanged by Mr. Beeger. It is shown by the original bills that warrant No. 2532, dated April 21, 1880, for

$500, is for a part of an indebtedness contracted on the 21st of April, 1880; that warrant No. 5738, dated February 11, 1881, for $678.55, is for indebtedness contracted in August, 1880; that warrant No. 5637, dated February 10, 1881, for $977.45, is for indebtedness contracted in August, 1880; that warrant No. 5831, dated February 19, 1881, for $1,600, is for indebtedness contracted in January, 1881; that warrant No. 5816, dated February 19, 1881, for $15.26, is for indebtedness contracted January 7, 1881; that warrant No. 6111, dated April 4, 1881, for $750, is for indebtedness contracted in March, 1881; that warrant No. 6847, dated May 27, 1881, for $500, is for indebtedness contracted April 8, 1881; that warrant No. 7347, dated July 6, 1881, for $1,392.75, is for indebtedness contracted April 8, 1881; that warrant No. 6095, dated March 11, 1881, for $2.20, is for indebtedness contracted March 9, 1881.

It is, therefore, made certain that of these warrants, $7,926.95 is for indebtedness contracted between the 20th day of April, 1880, and the 10th day of March, 1881.

It is suggested by counsel for plaintiff that a large part of the indebtedness contracted before April 20, 1880, is void, and that it must be affirmatively shown that debts contracted before the debts represented by the Beeger warrants are valid.

So far as this case is concerned, we must presume that all warrants issued before the Beeger warrants were issued are valid. As between two obligations, both of which are controlled by the constitution, the one that is first in point of time is presumed to be good.

It is also contended that the money in the treasury and the uncollected taxes should be deducted from such indebtedness.

The evidence shows that there was no money in the treasury, and even if the uncollected taxes were deducted, there would yet be many thousands of dollars of indebtedness more than the constitutional limit when the warrants representing this $7,926.95 were issued.

At the time these warrants were exchanged for funding bonds the law did not authorize and require the Board of County Commissioners to adjudicate with reference to their validity, or the validity of any outstanding indebtedness. (1 Mills Ann. St., § 939). They exchanged the bonds for warrants in the order that statements were received from warrant holders, whether valid or invalid. The exchange was made in bulk. There was no attempt to apportion any particular warrant to any particu-

lar bond. Every warrant was a part consideration for every bond, each bond being a separate and distinct obligation. There was a separate and distinct contract with separate and distinct warrant holders. In every case the bonds were numbered and exchanged for the warrants presented with the statement, and show that they were mere representations of the old debt, as evidenced by the warrant, and they cannot be considered as a new debt. (1 Mills Ann. St., § 941).

The bonds show upon their face that they are issued to fund a floating indebtedness of $500,000.

They do not contain the recital that the constitutional limitation of indebtedness had not been exceeded by their issuance, or any such recital as would estop the county from making its defense. For this reason we do not consider the cases of Dudley v. Lake County, 80 Fed. Rep. 672; Rollins v. Gunnison County, 80 Fed. Rep. 692, and Gunnison County v. Rollins, 173 U. S. 255, as authority in determining this case. And for the same reason we cannot adopt the decision of Judge Marshall of Utah, rendered in the Keene Five-Cent Savings Bank v. the Board of County Commissioners of the County of Lake, which is in line with and following the decisions rendered with reference to such bonds as the Chaffee and Gunnison county funding bonds.

The court's attention has been called to the judgment rendered by Judge Bailey in a case where the same questions were involved as in this case. It is to be regretted that Judge Bailey did not file a written opinion, to show upon what evidence, and upon what theory of law he based his judgment.

The evidence in this case having disclosed the fact that the indebtedness for which the warrants issued and were exchanged for the bonds from which some of the coupons in this case were cut, amounting to $7,926.95, was contracted at a time when the county had no power to incur such indebtedness, it must be presumed that at the time Mr. Beeger received the said warrants, and when he received the bonds in exchange therefor, he knew what the constitutional limitation of indebtedness was, and that the bonds did not contain any recital that would estop the county. Even if there had been such recital, under the evidence in this case it would not avail the plaintiff.

By the provisions of the act under which these bonds were issued, the Commissioners were required to determine the whole amount of bonds to be issued, which amount should not exceed the county indebtedness at the time when notice was first pub-

lished. They were required to make a certificate of the amount of bonds to be issued, and make it a part of the records of the county. (1 Mills Ann. St., § 939). The recital in the bond that it is "issued under and by virtue of and in compliance with an act of the General Assembly of the state of Colorado, entitled 'An act to enable the several counties of the state to fund their floating indebtedness,' approved February 21, 1881," (L. '81, p. 85); and the certificate, "That all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond," simply means that the board had determined that it would require an issue of $500,000 of funding bonds to float its outstanding indebtedness, and that they had not issued any bond in excess of $500,000.

This recital did not relieve any person from the duty of examination to see whether or not the constitutional limit of indebtedness had been exceeded.

That it was the duty of any one desiring to procure said bond to make such examination is settled by many decisions. Dixon Co. v. Field, 111 U. S. 83; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654; Sutliff v. Commissioners Lake Co., 97 Fed. Rep. 270.

We think, also, that the decision of our own Supreme Court, In Re Appropriations in 13 Colo. 316, supports this principle.

In Gunnison County v. Rollins, 173 U. S. 255, 19 Sup. Ct. 390, the court, in an exhaustive review of all its former decisions on this subject, and from the classification of the cases and reasoning of the court in that case, these two rules may be deduced:

First—That where the statute under which the bonds are issued authorized the board or officers empowered to issue them to determine whether the proposed issue of bonds would in fact exceed the limit prescribed by the statute, the recital in the bond to the effect that such determination has been made, and that the statutory limit has not been exceeded, and the bonds on their face do not show such recital to be false, then in a suit brought by a *bona fide* holder of the bonds, the county issuing the bonds is estopped from saying such recitals are not true.

Second—That where the statute under which the bonds are issued does not authorize the board or officers empowered to issue them to determine whether the proposed issue would *in fact* exceed the limit, and there is no recital in the bond that they do not exceed the limit, and each bond on its face, when taken in connection with the assessment roll, shows the limit has been ex-

ceeded, then the general recital that "All the provisions and requirements of the law have been fully complied with by the proper officers in the issuing of the bonds," will not estop the county from showing that the bonds exceed in amount the constitutional limit. When that fact is shown, they are void in the hands of everyone and create no indebtedness, no obligation, legal or moral. Neither the legislature nor the officers and agents of the state or county, nor all combined, can create a debt or incur an obligation for or on behalf of the state or county, except as to the amount provided for in the constitution.

The leading cases in support of this second rule are Dixon County v. Field, 111 U. S. 83; Sutliff v. Lake County, 97 Fed. Rep. 270; Lake County v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651; In Re Appropriations, 13 Colo. 316.

We think that this case must be governed by the second rule, as each bond shows upon its face that it is one of an issue for $500,000, and the certificate only shows that not more than $500,000 were issued. There is no recital concerning the validity of the indebtedness.

In the People v. May, 9 Colo. 80, 404, it is held that this limitation is applicable to all indebtedness, irrespective of form, and that any warrant which increases the indebtedness beyond the constitutional limit is void. The limitation is held to include debts incurred by operation of law, as well as those arising from express contract.

In Lake County v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, it is held that the amount of indebtedness which may be incurred depends upon the assessed valuation, and that this is ascertained but in one way—that is, by reference to the assessment roll, itself a public record, equally accessible to all persons; that nothing in the way of inquiry or determination is left to the Commissioners, as to the amount of the assessment, and they cannot contradict it by any recital.

It is, therefore, considered, in the light of the evidence and the principles of law, as declared by the Supreme Court of Colorado, that defendant has clearly established that $7,926.95 of the amount sued for in this action is for indebtedness contracted after April 20, 1880, at a time when the County of Lake had outstanding a much larger indebtedness than its constitutional limitation.

That when its Board of County Commissioners contracted said debt it was a flagrant violation of said section 6, article 11 of the constitution of Colorado.

But it appearing that of the warrants exchanged, representing an indebtedness amounting to $680.60, is conceded by defendant to be valid, and the court being unable to trace the valid warrants into any particular bond, or to determine what coupon or coupons represent the valid indebtedness, and the greater part of the amount sued for being invalid, the valid and invalid warrants being so blended together in exchange for the bonds, a judgment cannot be rendered for plaintiff on any particular coupon or coupons in this action; therefore, it is ordered and adjudged that defendant have judgment against plaintiff for costs herein.

It is further ordered that said judgment be entered without prejudice to any right plaintiff may have concerning the indebtedness as shown by warrants Nos. 422, 1656, 7335 and 1548.