ST. PAUL, J.
 

 (dissenting). Plaintiffs (taxpayers) seek to annul a certain parish wide tax of 2 mills on the dollar, voted September 23, 1923, for giving additional support to public schools, on two grounds:
 

 (1) That in the Heflin school district special taxes had already been levied amounting to 25 mills on the dollar; which (they allege) is the constitutional limit for
 
 all
 
 special taxes (citing- Const. 1921, art. 10, § 10, p. 85).
 

 (2)
 
 That, in any event, there had already been levied forgiving additional support to public schools, special taxes of 20 mills in the Heflin school district, 10 mills in the Hortman school district, and S mills in the Doyline school district, being equal to, or in excess of the constitutional limit on special taxes “for giving additional support to public schools”; which special taxes the Constitution declares are “not to exceed, in the aggregate, on any property, in any year 8 mills on the dollar.” See Const. 1921, ut supra.
 

 In the
 
 alternative
 
 plaintiffs pray that should said parish wide 2-mill tax be sustained,
 
 then
 
 that a certain 5-mill
 
 tax lor giving
 
 additional support to public schools, voted by the Hortman school district on September 18, 1923 (the same day on which the 2-mill parish wide tax was voted), be declared null, or at least
 
 reduced
 
 ,to 1 mill, so as to bring the total of special taxes for additional support to public schools in said Hortman school district down to the constitutional limit of 8 mills (say 7-mill parish wide tax, plus 1-mill Hortman school district tax), and in the further alternative, even should said parish wide 2-mill tax be declared illegal, then that said Hortman. school district tax be reduced to 2 (3?) mills, so as to bring the total of said special taxes in said district down to the constitutional limit of 8 mills (say 5-mill parish wide tax, plus 3 mills local).
 

 Such is the substance of the complaint.
 

 The defense claims that the taxes are
 
 all
 
 valid.
 

 I.
 

 The trial judge sustained the 2-mill parish wide tax, but annulled the 5-mill Hortman district tax, and also a 3-mill Doyline dis
 
 *1061
 
 trict tax, voted May 28, 1923, and both sides have appealed.
 

 II.
 

 The solution of the issues involved herein is dependent primarily upon the interpretation to be given to article 10, § 10, p. 85, Constitution of 1921; hence we quote, so far as applicable here:
 

 “Section 10. Por the purpose of
 
 CONSTRUCTING- OR IMPROVING
 
 public buildings,
 
 schoolhouses,
 
 roads, bridges, levees, sewerage or drainage works, or other works of permanent public improvement, title to which shall be in the public, or'
 
 FOR TUB MAINTENANCE THEREOF,
 
 any political subdivision may levy taxes,
 
 in excess of the limitations othenoise fused in this Constitution,
 
 not to exceed in any year 5 mills on the dollar for any one of
 
 said
 
 purposes, and not to exceed in any year 25 mills on the dollar, on any property, for all of
 
 SAID
 
 purposes;
 
 AND for giving additional support to public schools,
 
 any parish, school district or sub-school district, or any municipality, which supports, or contributes to the support of, its public schools, may levy taxes,
 
 in excess of the limitations otherwise fixed in this Constitution,
 
 not to exceed,
 
 IN THE AGGREGATE, on any property,
 
 in any year, 8 mills on the dollar; provided, no special tax authorized by this section shall run for a longer period than ten years, and, provided further, that the rate, purpose and duration of any such special tax shall have been submitted to the resident property tax payers qualified to vote in the subdivision in which the tax is to be levied, and a majority of those voting, in number and amount, shall have voted in favor thereof. The provisions of this section
 
 shall not affect
 
 the validity of any tax levied by authority of an election held prior to the adoption of this Constitution. * * * ” (Italics and capitals ours.)
 

 III.
 

 From the foregoing it seems clear enough that special taxes may be levied, ■
 
 m excess of all other limitations,
 
 as follows:
 

 (1) For the
 
 construction, improvement, and maintenance
 
 of permanent public works, including schoolhouses, provided such special taxes do not exceed 25 mills for
 
 all
 
 such purposes or 5 mills for any one purpose.
 

 (2)
 
 And,
 
 for giving additional support to public schools, provided such special taxes do not exceed
 
 IN THE AGGREGATE,
 
 on any property, 8 mills on the dollar.
 

 The construction and
 
 maintenance
 
 of a schoolhouse is one thing, and the
 
 support
 
 of the public school itself is quite another thing. Maintaining public schoolhouses means holding, keeping,
 
 preserving them,
 
 in their existing condition; supporting public schools, means
 
 operating them.
 
 See Orleans Parish School Board v. Murphy, 15G La. 925, 101 So. 268. And the Constitution authorizes taxes for
 
 both
 
 purposes, and says very plainly that
 
 both
 
 the 8-mill tax for the
 
 support
 
 of public schools, and the 5-mill tax for the construction and
 
 maintenance
 
 of schoolhouses (within the 25-mill limit) may be
 
 in excess of all other limitations.
 
 Hence the 8-mill tax for the
 
 support
 
 of public schools is
 
 not
 
 within the 5-mill limit of special taxation for construction and
 
 maintenance
 
 of schoolhouses; nor yet within the 25-mill limit of
 
 all
 
 special taxation for the construction and maintenance of
 
 permanent public worlts.
 
 The limit of special taxes under said section 10 is therefore 33 mills on the dollar,
 
 not
 
 25 mills as contended for by plaintiffs. And, accordingly, plaintiffs’ first ground of attack on the 2-mill parish wide tax is not well founded.
 

 IV.
 

 The section provides that special taxes for additional
 
 support
 
 to public schools shall not exceed, m
 
 the aggregate, on any property,
 
 8 mills on the dollar.
 

 It has been suggested, however, that this means only that the
 
 aggregate
 
 of all such special taxes collected
 
 under any one authority
 
 shall not exceed 8 mills, and that some other governing authority or authorities in school matters may also levy
 
 additional
 
 school taxes, provided that in each instance such taxes do not exceed,
 
 in the aggregate, 8
 
 mills on the dollar; that is to say (and the contention is) that a parish (or
 
 *1063
 
 parish wide school district) may levy 8 mills for school purposes; that a sub-school district within said parish may also levy 8 mills for the same purpose; and a municipality within said sub-school district an additional 8 mills — mating in all 24 mills on property situated within the municipality, viz. 8 mills levied by each one of these different authorities; the taxes imposed by
 
 each
 
 authority not exceeding,
 
 in the aggregate,
 
 the S-mill limit.
 

 It is further suggested that the same applies as well to the 25-mill limit, so that a parish might levy 25 mills for public works— say 5 mills for a new courthouse, 5 mills for schoolhouses, 5 mills for roads, 5 mills for a bridge, and 5 mills for sewerage or drainage; that none the less a school district might still levy 5 mills for an additional schoolhouse; a road district (coextensive with said school district) another 5 mills for roads; and a municipality (within said school district and road district) still, further levy 25 mills, say, 5 for a townhall, 5 for a bridge or viaduct, 5 for drainage, 5 for sewerage, and 5 for street repairs. Say all together 60 mills of special taxes, plus 24 mills, or 84 mills in all (which might be increased if further examples were sought), in addition to the regular state, parish, municipal, and levee taxes.
 

 In other words, under such a contention there would simply be
 
 no limit
 
 to special taxes so long as they were levied under
 
 different
 
 authorities, and- so long as
 
 each
 
 several authority levied only 5 (or 8) mills for any one purpose or 25 (or 33) mills for all purposes. That is to say, the
 
 rate
 
 of special taxes might appear to be limited, but since the number of taxing authorities, each taxing the same property, would be
 
 unlimited,
 
 it follows that the amount of special taxes to be paid by any one piece of property would be limited only by the unwillingness of the property holders
 
 to
 
 vote them. Such was the condition under the Constitution of 1913, and accordingly we find that, prior to the adoption of the Constitution of 1921, the Heflin school district had already voted 5 mills for roads, 5 mills for parish wide school purposes, and 15 mills for local school purposes. These are all valid taxes, so recognized by the section above quoted.
 

 But the Constitution of 1921 apparently meant to put
 
 some
 
 limit on special taxes; otherwise why say that special taxes for constructing and 'improving works of public improvement were “not to exceed in any year 25 mills on the dollar,
 
 on any property, for all of said purposes."
 
 Certainly, if that limitation was to apply only to each several taxing authority, it would have been otherwise expressed; it would not have been said simply that special taxes
 
 for all purposes ON
 
 ANT
 
 PROPERTY
 
 shall not exceed 25 mills.
 

 Our -conclusion is that the constitutional limitation of 25 mills
 
 for all purposes
 
 of public improvement,
 
 on any property,
 
 means simply that no property shall be taxed, by whomsoever, more than 25 mills for such purposes; that the constitutional limit of 8 mills,
 
 in the aggregate,
 
 for additional support for public schools, means simply that the aggregate of
 
 all
 
 taxes for such purpose, by whomsoever imposed, shall not exceed 8 mills on any one property.
 

 It is said that the public schools cannot be conducted as they should be upon such meagre allowances, and that it would be a hardship upon a municipality which needed a new -townhall, or required a new sewerage or drainage system, that it should find itself handicapped by the fact that the parish had already exhausted the 25-mill tax limit, etc.; that the Constitution intended no such far-reaching consequences.
 

 That is merely arguing
 
 al) inconveniente
 
 and the only answer is that the Constitution did nevertheless limit the
 
 total
 
 of special
 
 *1065
 
 ¿axes for tlie support of public schools fo 8 mills in any year, and the total of special taxes for public improvements to 25 mills.
 

 Whether the constitutional convention ought or ought not to have placed a limita-tión on the right of the people to tax themselves (by their own vote) is neither here nor there. The fact is that it did so, and it is the plain duty of this court to so declare.
 

 V.
 

 In considering whether the 2-mill parish wide tax for the support of the public schools he or be not valid, it is incumbent upon us to inquire into the extent of the special' taxes in any part of the parish already
 
 vadidly
 
 imposed; for of course a tax must operate uniformly throughout a taxing district, and, if it cannot he levied in one part thereof, it cannot be levied in any other part, since “all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax.” See Const. 1921, art. 10, § 1, p. 81. But, on the other hand, a validly imposed tax cannot be defeated by the alleged exhausting of the taxing power, if in point of fact the prior tax be itself
 
 invalid.
 

 Thus a 5-mill special tax imposed by a village council,
 
 vAthotit the vote of the people,
 
 to build a new townhall, could not be counted in the 25-mill special taxes which a parish may levy by vote of its people, even if the taxpayers have not resisted it; for their voluntary payment thereof cannot make such a tax valid, and any one may at any time resist further payments. One cannot pay (or offer to pay) an alleged tax which he need not pay because it is not valid, and at the same time refuse to pay a validly imposed tax, on the ground that the invalid tax has already exhausted the limit of taxation. The proper course to pursue is, of course, to
 
 resist the invalid tax,
 
 and
 
 pay the valid
 
 tax.
 

 For otherwise the validity of a tax would be dependent not upon the law, but upon the willingness of the taxpayer to pay. Thus in the examples above given further special
 
 parish taxes
 
 might be
 
 valid
 
 if the taxpayers chose to pay those taxes and resist the village tax, but they would be
 
 invalid
 
 if the taxpayers chose to pay the
 
 village tax
 
 and resist the parish taxes. Which, of course, cannot be true. Thus;
 

 “Where the constitutional limit for the total state levy has been exceeded, the relative priority of both general and special taxes is fixed by the date when the acts providing for each took effect,
 
 giving preference, however, to levies to meet appropriations for the support of the executive, legislative, and judicial departments."
 
 37 Cyc. 764, No. 81, Citing People v. State Board of Equalization, 20 Colo. 220, 37 P. 964.
 

 The reason being, of course, that a tax
 
 necessary
 
 for the support of the government cannot be shut out and defeated by a
 
 nonessential
 
 tax, even though the levy thereof be prior in point of time. Much less, therefore, can a
 
 valid
 
 tax be shut out and defeated by an
 
 invalid
 
 tax, even though the levy of the latter be prior in point of time.
 

 VI.
 

 It is therefore necessary for us to examine the status of the special taxes in the three school districts heretofore mentioned, viz. the Heflin district, the Hortman district, and the Doyline district.
 

 In all three districts we find a parish wide tax of 5 mills for the support of the public schools voted April 1, 1919, for ten years (1919-1928). Therefore there remains only a matter of 3 mills more that might be levied for the same purpose. If there be in any one. of said districts
 
 valid
 
 special taxes to that extent already levied for such purpose, then the parish wide tax of 2 mills, herein complained of, cannot be sustained. If, on the other hand, there be in said three districts only the one 5-mill parish wide tax aforesaid, then there still remains in
 
 *1067
 
 tlie parish power to levy, not only the 2-mill tax complained of, but even S mills; and the 2-mill tax must be sustained.
 

 YII.
 

 In the
 
 Heflin school district,
 
 we find only the aforesaid parish wide tax of 5 mills for the
 
 support
 
 of the public schools. We find, however, a 5-mill tax voted February 24, 1920, for seven years (1920-1926) “the proceeds of the said tax to be used
 
 in building
 
 in the said district,” and we find also a 10-mill tax voted July 12, 1920, for ten years (1920-1929) “the proceeds of the said tax to be used in constructing and equipping a school building in said district.”
 

 We consider the
 
 equipment
 
 of a school building (desks, seats, platforms, blackboards, etc.) to be necessary and permanent fixtures thereof, as much a part of the building (when intended and used for school purposes) as the very roof and flooring thereof; just as the bench, the bar, the witness stand, etc., are necessary and permanent fixtures of a courtroom, and constitute an integral part thereof (when used for court purposes), as much so as the walls which inclose it. Hence this 5-mill tax and this 10-mill tax are special taxes for permanent public improvements, and no part thereof can be used for the support (i. e. operation) of the schools. Orleans Parish School Board v. Murphy, 156 La. 925, 101 So. 268. (Note.— These taxes were voted prior to Constitution of 1921; hence they are saved by section 10, and do not come within the 5-mill limit for any one purpose. They affect only the 25-mill limit which we have heretofore discussed. Likewise the 5-mill road tax in this district, voted June 10, 1922, for ten years [1922-1931], affects.only the 25-mill question.)
 

 Accordingly we find in this district only the aforesaid 5-mill parish wide tax of April 1, 1919, available for the
 
 support
 
 of public schools, thus leaving here a margin of 3 mills for the
 
 support
 
 of the public schools.
 

 VIII.
 

 In the
 
 Hortman school district,
 
 we find, of course, the 5-mill parish wide tax of April 1, 1919, for the
 
 support
 
 of the public schools. We also find a 5-mill tax voted in this district on September 18, 1923 (the same day on which the parish wide 2-mill tax was voted). This tax was voted for five years (1923-1927) “the proceeds of said tax to be used to give
 
 additional aid
 
 to the public schools in Hortman school district.” This tax,
 
 if valid,
 
 affects and more than exhausts in that district the limit of 8 mills which may be voted “for giving
 
 additional support
 
 to public schools.”
 

 But we think this tax
 
 invalid,
 
 for this reason: The tax was submitted to, and voted upon by, the voters of the whole school district; but the ordinance submitting the tax provided that the
 
 distribution
 
 of the tax should be as follows: The district should be divided into two (equal?) parts by a north and south line; all taxes collected from east of said line to be used for schools on the east thereof, and all taxes collected from west of said line to be used for schools on the west thereof.
 

 Now the practical effect of this was that the Hortman school district was divided into
 
 tioo sub-school districts,
 
 one lying east, and other west, of said north and south line, and that two
 
 distinct
 
 taxes (which though equal were yet for
 
 separate
 
 purposes) were submitted to the voters. But, instead of submitting these separate taxes in
 
 each
 
 sub-district, to the qualified voters of that sub-district alone, the school board submitted both taxes to the joint voters of both sub-districts, and accordingly one or the other of said two subdistricts had it (or might have had it) within its power to force a tax upon the other. But the Constitution (as above quoted) requires that such special tax shall
 
 *1069
 
 be “submitted to the resident property tax payers qualified to vote in the subdivision
 
 in which, the tax is to he levied.”
 

 Our conclusion is that such a method of submitting a tax question is not within the contemplation of the Constitution. The wealthier and more populous section of a district might thus force a tax upon the poorer and less populous section, and yet keep the lion’s share of the taxes for itself. If the
 
 purses
 
 are to he kept separate, then
 
 the taxing power
 
 should also he separately exercised. And the very evident purpose of this “gerrymandering” was to circumvent the prohibition, in section 2 of Act 152 of 1920, p. 231, against the creation of
 
 suh-school districts
 
 in a school district other than a parish wide school district. The whole proceeding is null. R. C. C. 12. Hinton v. Winn Parish School Board, 155 La. 666, 99 So. 523.
 

 Accordingly we find in this district also only the aforesaid 5-mill parish wide tax of April 1, 1919, available for the support of public schools, thus leaving here also a margin of 3 mills for the support of the public schools.
 

 IX. .
 

 In the
 
 Doytine school district
 
 we find the 5-mill parish wide tax of April 1, 1919, for the support of the public schools. We also find a 3-mill tax voted May 28, 1923, for ten years (1923-1932) “the proceeds of said tax to be used in giving
 
 additional aid
 
 to the public schools of said district,
 
 and
 
 for making
 
 additions to
 
 the present building.”
 

 We think this tax
 
 invalid
 
 for the following reasons: The Constitution (section 10, above quoted) provides for special taxes for two
 
 separate
 
 purposes — to wit, first, for constructing school buildings; secondly, for operating the schools — ^and places separate and different limitations on each, viz. 5 mills (within the 25-mill limit) upon the first, and 8 mills (beyond the. 25-mill limit) upon the second. It does
 
 not
 
 merely authorize! a 13-mill tax for construction
 
 and
 
 support, to be distributed or used for either or both purposes in the discretion of the school board; say 10 mills for construction and 3 mills for support, or 10 mills for support and 3 mills for construction; or perhaps 13 mills for construction and nothing for support, or 13 mills for support and nothing for construction. For the Constitution says the “rate,
 
 purpose
 
 and duration” of such taxes must be approved by the voters, and the
 
 purpose
 
 of a tax cannot be intelligently voted upon, unless it be distinctly stated. The Constitution nowhere authorizes the voting of taxes to be used by the school board according to its own discretion; the
 
 voters
 
 must determine the purpose of the tax, and by this we understand that the voters must know and approve of the application of said tax to some one designated purpose. The Constitution uses the word purpose in the
 
 singular
 
 not in the plural (purposes), and, whilst it might perhaps be permissible to group together as one, two or more related purposes, as to which the same limit of taxation applies, it is certainly
 
 not
 
 permissible to group two different purposes governed by two wholly different limitations. The reason is that it should be possible for the taxpayer (and the courts) to see whether the particular limit applicable in either case has been reached, without having to inquire into the use to which said tax had been put in any given year.
 

 Thus, for instance, if a school district had already voted 3 mills for construction and 5 mills for support, and were to vote another 5 mills for construction
 
 and
 
 support, without designating the millage to be used for each purpose, then (if that were permissible) the validity of this last would depend upon how the school board would apply that tax, having clearly the right to use its own discretion under the tax ordinance. So that, if the board used 3 mills thereof for construe
 
 *1071
 
 tion, and only 2 mills for support, tlie 5-mill
 
 construction
 
 limit would be exceeded; or, if the board used 4 mills thereof for support and only 1 mill for construction, then 8-mill
 
 support
 
 limit would be exceeded.
 

 Or, say that a
 
 parish
 
 had used 20 mills for other construction purposes, and desired to levy 5 mills additional in a school district where a
 
 floating
 
 tax of 5 mills had been voted for
 
 support
 
 of public schools
 
 and
 
 for construction of schoolhouses. Then the validity of the parish wide 2-mill tax would depend upon the manner in which the school board had used the 5-mill floating tax for that year. If
 
 all
 
 of it had been used for
 
 support,
 
 then the 5-mill additional parish wide tax would not exceed the 25-mill construction limit; but if any part of the floating 5-mill district tax had been used for construction purposes, then the 5-mill parish wide tax would exceed the 25-mill limit in that district.,
 

 In other words, the legality of the parish wide 5-mill tax would depend on how the school board shifted the 5-mill floating tax from year to year. In those years in which the whole of if was used for
 
 support,
 
 the parish 5-mill tax would not exceed the 25-mill limit; whilst in those years in which the whole 5-mill district tax would be used for
 
 construction,
 
 the 5-mill parish tax would exceed that limit. And there we would be with a nondescript tax, valid one year, invalid the next, or
 
 vice versa.
 

 Our conclusion is that the Constitution does not authorize the levy of a single tax for the double purpose of constructing schoolhouses and supporting the schools, leaving to the school board the right to use said tax wholly for either purpose, or partly for both. Special taxes for the support of schools must be voted for
 
 separately
 
 from taxes for building schools and special taxes for building schools must be voted for
 
 separately
 
 from taxes for the support of schools. Otherwise we would find ourselves unable to say whether the limit of such taxes had been reached in any given case since the shifting of the tax (or its proceeds) from the one purpose to the other and back again would constantly affect that limit and make it meaningless.
 

 This 3-mill tax being null, we find again in this district only the aforesaid 5-mill parish wide tax of April 1, 1919, available for the support of the public schools, thus leaving here also a margin of 3 mills for the support of the public schools.
 

 X.
 

 The parish therefore still has a margin of 3 mills available for the support of the public schools, and accordingly its levy of 2 mills for that purpose on September 18, 1923, did not exceed the constitutional 8-mill limit.
 

 XI.
 

 The trial judge, as we have said, sustained the 2-mill parish wide tax, but annulled the 5-mill Hortman district tax and also the 3-mill Doyline district tax.
 

 Plaintiffs say in their brief:
 

 “The district court, in its efforts to sustain the parish wide 2-mill tax, without any reason set aside the 3-mill tax in the Doyline district as illegal. It is not known on what grounds it is illegal in itself, and, further, no ground of illegality was set forth in the petition or answer. It is presumed that the court wanted to sustain the parish wide tax of 2 mills, and for this reason,
 
 on its own volition,
 
 declared the 3-mill tax,
 
 being a smaller tax,
 
 illegal to give effect to
 
 the las-ger tax.
 
 (Italics ours.)
 

 Aside from the fact that it is quite permissible for a court to incline favorably towards the enforcement of a tax levied for a purpose which every one approves,
 
 if it can do so withotit violating the lato,
 
 our very high regard for the learning, ability, and fairness of the district judge led us at once to conclude that (although he had as
 
 *1073
 
 signed no
 
 written
 
 reasons, yet) lie could not Iiave acted purely
 
 arbitrarily,
 
 and must have Lad (or thought he had) good reason for what he did. We do not know by what route he reached his conclusions; but we do know that they are correct. "And we have given
 
 our
 
 reasons for thinking so.
 

 The fact that the Doyline district tax of 8 mills was a
 
 smaller tax
 
 than the parish wide 2-milí tax is of no consequence whatsoever. The question under consideration was, and
 
 had to be,
 
 which of these two taxes was the
 
 valid
 
 tax and which the
 
 invalid
 
 one. Nor could it make any difference in considering that issue that, in attacking the validity of the 2-mill parish tax, plaintiffs refrained from questioning the validity of the 3-mill district tax, making the 'existence of that 3-mill tax the basis of their attack on the 2-mill tax. Por, as we have said before, the validity of the 2-mill parish tax depends
 
 essentially
 
 upon the illegality 'of the 3-mill district tax. If the 3-mill tax be legal, then the 2-mill tax is necessarily invalid,' and, if plaintiff may by refraining from questioning the validity of the 3-mill tax shut off any inquiry into the legality of that tax, then we do not see wherein arises any question of law worthy of serious consideration. For, if that were true, then the opinion of this court would necessarily have to be (substantially) as follows:
 

 Major Premise.
 
 The constitutional limit of S mills has been reached in the Doyline district by the 5-mill tax plus the 3-mill tax.
 

 Minor Premise.
 
 Plaintiffs
 
 admit
 
 the validity of
 
 all
 
 these taxes, and hence their validity cannot be questioned by the court.
 

 Conclusion.
 
 Therefore the court must hold that the additional 2-mill parish tax will exceed the 8-mill limit and is invalid.
 

 But, as we have already said, and now repeat, the fault lies with plaintiff’s
 
 minor premise;
 
 plaintiff cannot
 
 admit
 
 the validity of the 3-mill tax, make
 
 that
 
 the ground of attack on the 2-mill tax, and thus abruptly shut off all inquiry into the validity of the 3-mill tax.
 

 As to the district court having annulled the Doyline district 3-mill tax
 
 “on its own volition,”
 
 plaintiffs overlook
 
 the
 
 fact that in their several petitions and supplemental petitions they have prayed:
 

 “Por
 
 general relief.
 

 “Por all further orders and decrees necessary land for)
 
 general and equitable
 
 relief.
 

 “Por
 
 any other judgment
 
 favorable and beneficial to plaintiff that may be warranted by the law and the evidence on the trial of this case, and for all necessary orders and decrees, and general,
 
 full
 
 and equitable relief.”
 

 And manifestly, when plaintiffs .have unsuccessfully attacked the
 
 wrong
 
 tax, upon the hypothesis that there is another valid tax (which accordingly they do not specially attack), the only GENERAL, PULL, and EQUITABLE relief which can and
 
 ought to be
 
 granted them is to relieve them- of the
 
 illegal tax.
 
 In that respect the judgment is certainly “favorable and beneficial to plaintiffs” under the circumstances.
 

 As to the- suggestion that “no ground of illegality (as to the Doyline 3-mill tax) was set forth in the petition or answer,” it suffices to say that the petition sets forth, and the record discloses, all the
 
 facts
 
 necessary to decide upon the legality
 
 vel non
 
 of the 3-mill Doyline district tax. That question of law arises
 
 on the face of the record,
 
 and it is immaterial that counsel have not suggested it, since the examination of that point was not only
 
 pertinent
 
 to the issue involved, but
 
 absolutely essential
 
 for a correct solution of that issue.
 

 XII.
 

 The Gulf Refining Company, one of the plaintiffs herein, -also attacks the right of the Webster Parish school board to submit a proposition for a parish wide school tax of any sort, arguing that under sections 1 and 2 of Act 256 of 1910 all propositions for
 
 parish wide special taxes
 
 must be submitted
 
 *1075
 
 by the police jury of the parish. There is no merit in the contention. Those sections say that a school district is a political subdivision of the state, and that the governing authority thereof is the parish school board; that the submission of a proposition for a special tax in any subdivision may be submitted by the governing authority thereof. Act 81 of 1918 authorized the creation of parish wide school districts; Act 152 of 1920 again authorizes the creation of parish wide school districts, and also recognizes all
 
 existing
 
 school districts.
 

 We fail to see wherein these statutes conflict with section 10 of article 10, Const, of 1921, quoted above. On the contrary, that section recognizes
 
 almost in words
 
 parish wide school districts, for it authorized
 
 in words
 
 special taxation in school districts and
 
 suXi-sclwol districts
 
 at a time when, under section 2 of Act 152 of 1920, there could be no sub-school districts except in parish wide school districts. Under such circumstances, to recognize sub-school districts was necessarily to recognize also parish wide school districts. (Note.- — The
 
 parish wide
 
 school district was created by ordinance of the Webster Parish school board on, February 21, 1919, under authority of Act 81 of 1918.)
 

 XIII.
 

 The
 
 specific
 
 relief asked for by plaintiffs was that the 2 per cent, tax be declared null; that same be canceled on the tax rolls; and that the tax collector be ordered “not to collect” said tax; but no
 
 preliminary
 
 injunction was obtained or even asked for.
 

 The district judge condemned the plaintiffs herein for 10 per cent, attorneys’ fees on the amount of the 2 per cent, tax due by them. This was error. In Shaw v. Watson, 151 La. 893, 907, 92 So. 375, this court held, the writer hereof dissenting, that under paragraph 2, § 56, of Act 170 of 1898„ attorney’s fees were due the tax collector only in three cases: (1) In a proceeding for a reduction of assessment; (2) in a proceeding for the collection of taxes; and (3) in an
 
 injunction
 
 suit to prevent the tax collector from collecting taxes, meaning a suit “accompanied by a preliminary injunction.” That was a suit to
 
 ca/ncel an assessment,
 
 and it was held that the tax collector was
 
 not
 
 entitled to attorneys’ fees. This is a suit to
 
 cancel a tax,
 
 and is “not accompanied by a preliminary injunction.” Under the authority of that case attorneys’ fees cannot be allowed here. In that particular the judgment; appealed from must be reversed; in other respects the judgment is correct and must be affirmed.
 

 I therefore dissent, and think the decree should be as follows, viz.:
 

 The judgment appealed from is therefore affirmed in so far as it declares the validity of the 2-mill parish wide tax for the support of the public schools, voted September 18, 1923, and in so far as it annuls the special tax of 5 mills voted in the Hortman school district on the same day, and also in so far as it annuls the special tax of 3 mills voted in the Doyline school district on May 28, 1923. And said judgment is reversed in so far as it condemns plaintiffs for attorneys’ fees on said 2-mill tax, and accordingly the sheriff and tax collector is now ordered to collect said 2-mill tax from plaintiffs, .with interest, but without attorneys’ fees; all costó in both courts to be borne by the Webster Parish school board.